## White v. City of Hopkinsville.

Dec. 1, 1939.

662

S. T. Fruit for appellant.

James E. Haggins and Franklin Rives for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 1, 1938, the City of Hopkinsville, Kentucky, which is one of the third class, by its Commissioners, passed an ordinance providing that its police department should consist "of a Chief of Police, Assistant

Chief of Police, Night Lieutenant and four regular patrolmen, and that such positions shall be filled by Herman King, Hiley Cobb, Buell Giles, George Gee, Maxie Gee, Elbert Jenkins, O. Harris and James Claiborne, respectively, it appearing that Jesse White, E. T. O'Grady and George Hale have been acting as patrolmen of the City of Hopkinsville, although neither of them have ever been regularly appointed, elected or confirmed to such positions, and that their services are no longer required, the above named three gentlemen are hereby dropped from any further duty or use with the said department.''

The sole question involved in this litigation between the city and appellant and plaintiff below, Jesse White, is the right of the city to terminate his services as patrolman or policeman of the city, as was done by the latter's ordinance referred to. The learned trial judge sustained the action of the Commissioners in dismissing appellant from the police force, and, questioning the correctness of that judgment, he prosecutes this appeal. In order to determine the question it becomes necessary to retrospectively review the facts relating to appellant's color of title to the office as based upon what occurred at the time of his installation on January 15, 1936, and what happened between that date and the passage of the ordinance supra.

On January 6, 1936, the Commissioners of the city, at its first and only reading, enacted an ordinance reducing the number of policemen of the city to seven and "dropping" from those theretofore serving as such, four names, as well as abolishing the position of Assistant Chief of Police. Following the attempted passage of that ordinance (we use the word "attempted" because the ordinance was not read the second time at separate meetings), and on January 14, 1936, a motion was made before the Commissioners and duly passed that "tne Commissioner of Public Safety, E. S. Melton, is hereby authorized to employ four white policemen and two colored patrolmen, temporarily," &c. Pursuant to that motion—and on the next day—Melton, to whom the authority of appointment had been so delegated by the motion, issued a certificate to the appellant saying: "Mr. Jesse White has been appointed as Special Policeman in and for the city of Hopkinsville, Kentucky, subject to call to active duty—said appointment continuing in effect, unless otherwise revoked, until 12/15/36." That

certificate was signed by Melton individually, and the appointment was accepted in writing by White, but it was never returned to the Board of Commissioners for entry upon any record of the city, or to any of its other officers for that purpose. Consequently no record was ever made of White's designation as policeman by Melton.

White began the services of policeman after that designation and served until past December 15, 1936, when it appears that he discontinued his services for a month, and for which he received no pay. But following such discontinuance he resumed the service, but how and in what manner there is no evidence introduced by parol, of record, or otherwise. From that time on he served until the enactment of the 1938 ordinance supra, by which his services were discontinued. He now insists that the city had no right to discontinue his services as one of its policemen, except upon a trial of duly preferred charges against him, and a finding by the Board of Commissioners of the city of such legal charges as may be preferred against him—all of which is provided for in Subsection Three of Section 3351a-2 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, which is Section 2 of Chapter 132 of the Acts of 1926, page 635, and all of which relates to Police and Fire departments of cities of the third class.

In substantiation of appellant's contention his counsel cites and relies on the two cases of Glass v. Board of Council of City of Frankfort, 262 Ky. 471, 90 S. W. (2d) 700, and City of Middlesboro ex rel. Minton v. Gibson, 225 Ky. 120, 7 S. W. (2d) 825. Another case which might have been cited by him as dealing with the same question is City of Middlesboro v. Byrd, 247 Ky. 348, 57 S. W. (2d) 49. In each of them the complaining policeman was discharged without charges being preferred against him, and, of course, without any finding by the city Commissioners that he was guilty of anything justifying his removal. Those cases also recognized the right of the Commissioners to, in good faith, reduce its number of policemen and thereby drop from service such abolished positions, and which right the statute preserves in this language: "That the provisions of this act shall not prevent the board from decreasing the number of firemen and policemen as the said board may from time to time deem proper." Section 3351a-2, subsec. 2.

In the Glass and Gibson cases supra, we held that such a decreasing of policemen should be bona fide, and not done as a subterfuge to serve political purposes, or to favor one person over another, and that, since in those cases it appeared that the decrease in the number of policemen was not in good faith but for an ulterior purpose other than the public weal, it was adjudged to be invalid, and the attempted dropped policeman was ordered to be reinstated. The opposite conclusion was reached, under the facts of the Byrd case. But in all of them we recognized the right of the legislative department of the city to act in the matter as prompted by a sound discretion, which would not be interfered with by the court, unless the action was clearly shown to have been taken contrary to the express provisions of the statute, and its clear purpose and intent—such purpose and intent being to remove the two departments of city government from the contaminating influence of local politics and to thereby guarantee efficiency in service and to assure incumbents of the stability of their positions as long as they were guilty of no dereliction of duty or other act authorizing and justifying their removal.

Subsection Two of Section 3351a-2, says: ''Members of the police and fire departments otherwise qualified under this law shall hold their positions during good behavior,'' but with the reserved right supra to decrease the membership of each department in the manner and good faith purpose above indicated. In every one of the cases cited supra—and all others we have been able to find—the complaining and discharged officer was elected or appointed so as to make his tenure of office as is prescribed by the statute, i. e., ''during good behavior.'' In each of them there was no limitation of the period of service, nor anything to indicate any measured term of service. Also in each of the cases the complaining officers were appointed by the proper board, and not by one whom it delegated to make the appointment, as was done in this case by Commissioner Melton when he designated the appellant as only ''Special Policeman'' and ''subject to call to active duty,'' with a final limitation of service ''unless otherwise revoked'' until December 15, 1936.

We, therefore, have a situation where appellant's original appointment was not even made by that department of the city government in which such authority is

lodged, but only by one whom that authority proposed to delegate that duty, and which delegated authority only authorized him to make his appointments "temporarily" which, as we have seen, he did by the certificate he issued to appellant. Not only so, but, as we have also seen, no record whatever was ever made of the acts and doings of Melton in the designation of appellant as one of the city's special or temporary policemen whose authority might be revoked at any time, and whose appointment did not in any event extend longer than December 15, 1936. Perhaps the evidence in this case might bring it within the condemned practice denounced in the Glass and Gibson cases supra so as to enable appellant to disregard his discharge and continue in the service as one of the city's policemen were it not for the fact that he never was a policeman to whom the immunity against discharge without accusation and conviction is extended, as is prescribed in the applicable statute supra. The character of policeman to whom that immunity applies is one who is elected or appointed "during good behavior," and who has passed the Civil Service Examination which the board of the city may have prescribed, if any. In accepting the place to which Melton designated him appellant must be deemed to have consented in advance that his tenure of office was only temporary and subject to be terminated by the board at any time. Having so agreed—as was done by his written acceptance of Melton's designation—he should not thereafter be permitted to shelter under the immunity contained in the statute supra, which is extended only to an appointee "during good behavior," and which has the effect, and was so intended, to bring such appointees under a sort of Civil Service whereby political changes in the personnel of the city's government could not arbitrarily terminate their positions.

It is an old maxim that "He who comes into equity must do so with clean hands." By continuing in the service after the expressed termination of his designation appellant was only a de facto officer by sufferance, so to speak, and could not by his continuing to serve convert himself into an appointee "during good behavior," which class of appointees, as we have seen, are the only ones to whom the immunity of the statute against removal is extended. We have not mentioned other questions that might be discussed, among which is that according to appellant's own testimony he was in-

eligible to even the character of appointment he received at the time Melton designated him, since the statute requires that members of the police force "shall be qualified voters of the city in which they are appointed"; when the facts are, as stated by appellant, that at the time of his designation he had been a citizen of the city for only about one week—having removed from a farm in the county to the city.

Before closing the opinion we deem it proper to call attention to the fact that prior to the enactment of the 1938 ordinance—or at least for two years prior thereto—the city of Hopkinsville, by its Board of Commissioners, do not appear to have appointed or elected any member of its police department except as "special" or "temporary" members. We find no authority for such a course of procedure. The statute clearly contemplates that the Police Department shall be constituted of members who shall serve during good behavior and who shall be immune from removal, except for cause duly found to exist after trial by the board as prescribed in the statute. However, the 1938 ordinance did specify the number of members of the Police Department of the city of Hopkinsville and designated the names of those who were to compose it, thereby evidencing of record a list of appointees without any sort of qualification, and which had the effect to make such appointees permanent ones, immune from removal, except upon conviction of legal charges duly preferred.

Summarizing, our conclusions are that under the facts adduced there never was a valid appointment of appellant to the position of policeman of the city of Hopkinsville, but if there had been, then his appointment was clearly shown not to be a permanent one so as to entitle him to the benefit of the immunity extended by the statute, and that the court correctly so held.

Wherefore, the judgment is affirmed; the whole Court sitting.