[L. A. No. 21634. In Bank. Mar. 3, 1952.]

HOMER J. HOSTETTER, Appellant, v. JOHN H. ALDER-SON et al., Respondents.

George E. Cryer and R. Alston Jones for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Bourke Jones, Assistant City Attorney, George William Adams and John F. Feldmeier, Deputy City Attorneys, for Respondents.

EDMONDS, J.—Homer J. Hostetter was removed from his position as a fireman of the city of Los Angeles following a hearing before the board of rights. He then filed in the superior court a complaint for declaratory relief. After trial, judgment was entered against him upon the ground that he was legally discharged. His appeal is from that judgment.

Hostetter's complaint names as defendants the city of Los Angeles and John H. Alderson, chief engineer and general manager of its fire department. The relief demanded is restoration to his position with full pay from the date of his removal. ▉ An action for declaratory relief is not appropriate for review of an administrative order. (See 10th Biennial Report of the Judicial Council of California, 137.) However, the complaint may be regarded as a petition for a writ of mandate. (See *Boren* v. *State Personnel Board,* 37 Cal.2d 634, 638 [234 P.2d 981].)

Hostetter alleges that Alderson issued an order temporarily relieving him from duty pending a hearing and decision by the board of rights on charges preferred under section 135

of the charter of the city of Los Angeles. The charges, as set forth in the order served upon Hostetter, are: "For your physical inability to properly perform the duties required of all uniformed personnel, at the expiration of your vacation . . . as provided in section 132 of the Rules and Regulations governing the department, such inability caused by illness incurred not in line of duty as determined by competent medical authority after thorough examination."

Other allegations of the complaint are that at the board of rights hearing only hearsay evidence was introduced as to his physical ability. Following the hearing, the board found him "guilty" and fixed the "penalty" to be imposed as "removal" from his position. Later, certain claims and demands for compensation and reinstatement and a request for rehearing by the board were filed. In conclusion, Hostetter asserts that a controversy exists as to the validity and effect of the proceedings against him.

In their answer, Alderson and the city state that Hostetter was present in person and represented by counsel of his own choosing at the board hearing and that he admitted his guilt of the charges filed against him. There was no objection to any of the evidence offered or received and Hostetter introduced evidence on his own behalf.

The record of the board hearing shows that Hostetter was present with counsel. Offered the opportunity of pleading guilty or not guilty, he replied: "Gentlemen, as the service demands fire duty, my answer is guilty, however if the service demands other duties my answer is not guilty and I would like my representative to explain this more fully." His counsel then elaborated, saying, ". . . yes the boy is guilty as charged in the Rules and Regulations read by you in which it says it may demand the duties of him as a part of the Fire Department . . . I would like at this time to enter a plea of guilty to the charges and ask for a suspension from the department of six months, at the expiration of such time he will have to submit to a complete medical examination . . . if he is found capable of performing fire duty he will be restored at that time."

In effect, Hostetter's defense at the hearing was that he was too ill to perform full duties; however, he could do light work and at some future time return to full duty. He introduced into evidence letters from various doctors indicating that improvement in his condition might be expected. The

record shows that he had requested, and been denied, an additional leave of absence to recover his health.

It appears that less than two weeks after completing his period of probation and becoming a fireman, Hostetter was discovered to be suffering from hyperthyroidism. Since that time he has been absent from duty 154 days. He received repeated leaves and vacations to permit him to attempt to recover his health. He was advised by his superiors to seek employment better suited to his physical condition and to resign from the force. Numerous records, reports and letters were introduced indicating Hostetter's unfitness for duty, the leaves which had been accorded him, and the treatment which he had received. One of his superiors testified that, during the period Hostetter was on active duty, he was a good fireman. In determining "the proper penalty to be prescribed," the board examined his personal file in his presence.

Following a trial before the court without a jury, the superior court rendered a declaratory judgment denying Hostetter any relief and holding that he had been legally discharged from his position for good and sufficient cause upon a fair and regular hearing.

Hostetter contends that the board of rights was without jurisdiction to proceed with the hearing because the complaint does not state a charge against him under section 135 of the city charter. He claims first that the complaint does not contain a statement in clear and concise language of all the facts constituting the charge, and second, that physical disability is not a ground for dismissal within the meaning of the charter section. The other points relied upon are that he was not afforded a fair and impartial hearing and that he was convicted solely on hearsay evidence.

■ Hostetter's first objection is to the grammatical construction of the charge filed against him. He contends that it is not a complete sentence, but a mere series of phrases not constituting a charge of any kind. However, despite grammatical weakness, the charge clearly and concisely states that Hostetter does not have the physical ability properly to perform his duties. It is sufficiently specific to permit the accused to identify the transaction, understand the nature of the alleged offense, and prepare and present his defense. (*Gipner* v. *State Civil Service Com.*, 13 Cal.App.2d 100, 107 [56 P.2d 535].) It was not necessary to plead the facts concerning his illness, its nature, cause, and duration.

The decisive question is whether the charter provides for dismissal because of physical difficulties.

Hostetter contends that physical disability is not a sufficient cause for removal under section 135 of the charter of the city of Los Angeles. His position is that this section is intended to provide a means of disciplinary action for an *offense* committed by a fireman, and that physical illness cannot be properly described as misconduct. He relies upon specific wording in the charter as tending to support his claim.

Paragraph one of section 135 provides that no officer or employee may be "suspended, removed, deprived of his office or position, or otherwise separated from the service of the Fire Department (other than by resignation), except for good and sufficient cause shown upon a finding of *'guilty'* of the specific charge or charges assigned . . ." after a proper hearing before the board of rights. (Italics added.) The paragraph further specifies that the charge must be based upon some act committed or omitted within one year prior to the filing of the complaint.

Paragraph 12 of the same section prescribes the procedure to be followed in the hearing before the board of rights. "The departmental personal history and records of the accused shall not be available to the Board of Rights except and only in such cases where the accused has been found guilty of any charge upon which he was heard or tried by the Board of Rights, then only for the purpose of determining a proper penalty to be prescribed; provided, however, that in prescribing such penalty the said board must look to the nature and gravity of the offense of which the accused has been found guilty and may at its discretion review the departmental personal history and record of such accused. . . ." From "penalty" and "gravity of the offense" Hostetter concludes that the section is to be confined to one of punishment for misconduct.

Although the phraseology of section 135 is somewhat inartistic, it does not necessarily mean that by inclusion of language possibly indicating a primary intent to punish for misconduct, inability to perform the duties of the position should not also be ground for removal. A comparable provision is found in the Government Code in sections 19570 et seq. which concern disciplinary proceedings before the Civil Service Commission. Section 19570 defines "punitive action" as dismssal, demotion, suspension, or other disciplinary ac-

tion. Section 19572, which for the most part enumerates acts of misconduct as cause for discipline, includes physical and mental disability.

A more pertinent inquiry is that of the basic policies behind this type of charter provision. In other jurisdictions having municipal charter provisions similar to the present one, it has been held that the best efficiency is obtained in public service when personnel are selected according to qualifications and positions are retained without fear of removal for reasons of local politics. (*White* v. *City of Hopkinsville*, 280 Ky. 661 [134 S.W.2d 236, 238].) Courts have also upheld the policy that the public is best served when department officials are permitted to eliminate unqualified or undesirable personnel, and to replace them with persons better qualified. (*City of Wewoka* v. *Rodman*, 172 Okla. 630 [46 P.2d 334, 336]; *Hunter* v. *Quick*, 183 Okla. 19 [79 P.2d 590, 593].)

In numerous decisions, the discharge or retirement of public employees physically or mentally unable to perform the duties called for in their positions has been upheld. (See Annotation, 28 A.L.R. 777; *Loucks* v. *Board of Education*, 258 App.Div. 1003 [16 N.Y.S.2d 733]; *Balacek* v. *Board of Trustees*, 263 App.Div. 712 [30 N.Y.S.2d 1007]; *Sganga* v. *Teaneck Tp.*, 130 N.J.L. 218 [32 A.2d 505]; *School Dist. No. 1* v. *Teachers' Retirement Fund Assn.*, 163 Ore. 103 [95 P.2d 720, 96 P.2d 419, 125 A.L.R. 720]; *In re Carney*, 182 Va. 907 [30 S.E.2d 789].) In *Gentner* v. *Board of Education*, 219 Cal. 135 [25 P.2d 824], and *Tilton* v. *Board of Education*, 25 Cal.App.2d 746 [78 P.2d 474], schoolteachers were retired because of physical disability. In the Tilton case, in commenting upon the Gentner decision, it was said: "The reasoning in that case dictates the conclusion that where, as in the instant case, the school board was justified in retiring a teacher because of physical disability to perform her duties, it became the board's duty to remove the teacher from the classroom, . . . Such a conclusion finds support in the basic principle underlying our school system—that the welfare of the children is the paramount consideration." (P. 749.)

It is apparent that there is no fault on the part of Hostetter or intimation that he has in any way been guilty of misconduct. But personal fault does not appear to be the primary consideration. Misconduct is important only insofar as it affects the efficiency of the department. The loss of efficiency to the department, and the detriment to

the public which would result from lack of authority to discharge a physically disabled fireman, is a sound basis for concluding that "sufficient cause" should be construed as physical disability resulting from illness not incurred in the line of duty.

If section 135 is given the construction urged by Hostetter, the charter makes no provision for the suspension or removal of a fireman in his situation because of nonservice connected disability. ▮ Hostetter argues that his was a case for retirement under section 182 and that he was entitled to a hearing before the Board of Pension Commissioners. However, that section applies only to a fireman disabled in the line of duty. Hostetter admits that his illness was not service connected.

Section 182¼ provides for retirement of a fireman who is disabled other than in the line of duty, provided he has served in the department for five years or more since the date of his last appointment. Hostetter's illness occurred almost immediately following his appointment and his total length of service is considerably short of five years.

Section 108 permits the transfer of physically disabled personnel to other civil service departments, but only in the event that the employee has served for at least three years, or has become disabled because of injury or illness resulting from the discharge of his duties. Hostetter meets neither qualification.

▮ Hostetter argues that he was found guilty solely upon hearsay evidence. The record does not support his contention. He admitted his inability to perform his duties and pleaded guilty to the charge against him. No evidence was required or taken upon the question of guilt. The records and papers introduced were solely for the purpose of enabling the board to determine the penalty to be prescribed.

▮ A thorough review of the record of the board hearing fails to disclose any unfairness therein. Hostetter was given every opportunity to present his case in person and by counsel of his own choosing. There is no allegation of bad faith or oppression on the part of the board, and none appears from the record. Hostetter's claim that Chief Alderson was unfairly prejudiced against him is not sustained by the evidence, nor is it shown that, even if such prejudice existed, it affected the decison of the board.

As the uncontradicted evidence shows facts justifying Hostetter's dismissal from the fire department, he is not entitled

to relief either in this action or by way of mandate. The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Section 135(1) of the charter of the city of Los Angeles provides that: "The right of an officer or employee of the Fire Department to hold his office or position and to the compensation attached to such office or position *is hereby declared to be a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise* than as herein in this section provided. *No officer or employee of the Fire Department shall be suspended, removed, deprived of his office or position, or otherwise separated from the service of the Fire Department, (other than by resignation) except for good and sufficient cause shown upon a finding of 'guilty' of the specific charge or charges assigned as cause or causes therefor after a full, fair and impartial hearing before the Board of Rights. . . .*" It is also provided that the charge must be based on some act committed or omitted within one year prior to the filing of the complaint.

Section 135(12) provides in part that the "Board of Rights, shall at the conclusion of the hearing, make its specific findings of 'guilty' or 'not guilty' (on each specific charge) which must be based upon the evidence adduced before it at such hearing and not otherwise and render and certify its decision in writing."

The only charge against plaintiff was that he was in ill health and unable to perform his duties because of physical disability. The two paragraphs of section 135 of the charter above quoted certainly connote some sort of *misconduct*. It appears to me that it takes quite a stretch of the imagination to say that one may be *found* "guilty" or "not guilty" of poor health. It most assuredly is not something over which an individual has any control.

The majority, in holding that plaintiff may be removed from the fire department under the quoted provisions of the charter, say that a comparable provision is found in section 19570 et seq. of the Government Code. I most emphatically do not agree. Section 19572(e) of that code provides specifically that an employee may be disciplined for physical or mental disability. No such provision is made in the section here under consideration.

Section 182¼ of the charter provides for retirement of a fireman who is disabled other than in the line of duty, provided he has served in the department for five years or more since the date of his last appointment. Plaintiff's illness occurred shortly after he had served his probationary period and so he does not come within this provision. Section 108 permits the transfer of physically disabled personnel to other civil service departments in the event that the employee has served for at least three years, or has become disabled because of service-connected disability. Plaintiff does not come within this category either, so there is very clearly a hiatus in the charter which the majority has filled by indulging in judicial legislation. Since no provision was made for disability which was not service connected and which occurred prior to the five year period of service, this court decides that plaintiff can be removed from his position upon a finding of "guilty" of poor health.

The majority opinion contains the following statement: "In numerous decisions, the discharge or retirement of public employees physically or mentally unable to perform the duties called for in their positions has been upheld." This statement is allegedly supported by the following authorities which, in my opinion, are all distinguishable from the case under consideration.

In *In re Carney*, 182 Va. 907 [30 S.E.2d 789], the act involved provided that: "Whenever the Supreme Court of Appeals of Virginia shall have reasonable cause to believe that the judge of any court of record in this State . . . *is afflicted with an illness or disability, mental or physical,* which renders such judge . . . *permanently incapacitated or incompetent* to discharge the duties of his office, it shall be the duty of the Court to enter an order directing an inquiry to determine such judge's . . . capacity and competency. . . ." (Italics added.) This case involved a situation where there was *specific statutory authority* for removal or retirement of the judge from office.

In *Sganga* v. *Teaneck Tp.*, 130 N.J.L. 218 [32 A.2d 505], there was no discharge involved. A police officer, due to defective vision, was unable to perform any police duties other than desk work and the court held that the township was justified in denying him a pension *and in putting him on sick leave at half salary.*

In *Balacek* v. *Board of Trustees*, 263 App.Div. 712 [30

N.Y.S.2d 1007], a fireman who was found to be totally and permanently physically unfit for duty was retired, *apparently at an annual pension.*

In *Loucks* v. *Board of Education,* 258 App.Div. 1003 [16 N.Y.S.2d 733], a schoolteacher was dismissed for physical disability. But there is nothing in the case to show whether or not any particular legislative act was involved.

In *Gentner* v. *Board of Education,* 219 Cal. 135 [25 P.2d 824], a schoolteacher who had, because of the Teachers' Tenure Law, achieved the status of a "permanent teacher" was dismissed because of incompetence and unfitness to teach. The School Code in effect at that time (Stats. 1933, ch. 391, p. 1017) provided for dismissal for "immoral or unprofessional conduct, commission or aiding or advocating the commission of acts of criminal syndicalism . . . dishonesty, incompetency, evident unfitness for service, persistent violation of or refusal to obey the school laws of California, or reasonable regulations prescribed for the government of public schools." This case presents another example of dismissal in accordance with *specific statutory authority.*

In *Tilton* v. *Board of Education,* 25 Cal.App.2d 746 [78 P.2d 474], a teacher was *retired* for physical incapacity (defective hearing) and the question presented for determination was whether she was to be given active employment from the date of her retirement until her dismissal at the end of the year. She was retired pursuant to the provisions of section 5.890 of the School Code *and no question was raised as to the propriety of her eligibility for retirement* or as to the physical facts which necessitated it.

In *School District No. 1* v. *Teachers' Retirement Fund Assn.,* 163 Ore. 103 [95 P.2d 720, 96 P.2d 419, 125 A.L.R. 720], a statute which provided for a pension plan for teachers under the age of 60 who should become disabled by reason of illness or accident was involved. The board of directors of the school district adopted a rule requiring every applicant to take a medical examination and where a physical disability was discovered, the applicant was to sign a waiver of any claim for disability benefits from the Teachers' Retirement Fund Association. The waivers were held void as contrary to public policy.

I have no quarrel with cases holding that a public employee may be retired on a pension or removed from office or position for physical disability when there is statutory authority therefor. I do object strenuously to such judicial

legislation as is found in the majority opinion. If the legislative body intends that an employee, in the position of the plaintiff here, may be removed from his position, it is its sole prerogative to say so. It is not the function of this court to determine that the charter provision, so obviously meant to provide for the discharge of an employee guilty of misconduct, applies to one suffering from a physical disability. If, as I am convinced it does, the charter makes no provision for the removal of a person in the category in which plaintiff finds himself, undoubtedly the situation could be remedied by the *proper* authorities in a very short period of time. It is not the duty of this court to supply the missing links in the legislative chain.

I would, therefore, reverse the judgment with directions to the trial court to enter judgment in favor of plaintiff directing his restoration to his position in the Department of Fire of the City of Los Angeles without loss of pay.

Shenk, J., concurred.

Appellant's petition for a rehearing was denied March 31, 1952. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.