[Civ. No. 33807. First Dist., Div. Two. Mar. 4, 1975.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v.
JEFFERSON ELEMENTARY SCHOOL DISTRICT et al.,
Defendants and Respondents.

684

## COUNSEL

Richard H. Perry for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Thomas F. Casey III, Deputy District Attorney, for Defendants and Respondents.

## OPINION

**KANE, J.**—This is an appeal[1] from the lower court's judgment denying a petition for writ of mandate and thereby affirming respondents' action in discharging one Betty Comisky ("Betty"), a school employee.

Betty, the real party in interest, was a permanent classified employee of respondent school district from July 1, 1967, to May 4, 1972. During this period, covering nearly 4 years and 10 months, Betty was absent from work 388 days, amounting to 31 percent of the total work time. Pursuant to Education Code,[2] section 13740,[3] and the rules and regulations issued thereunder, respondents brought charges claiming that Betty had been unable to maintain acceptable standards of productivity due to her extensive and prolonged absenteeism and had become inefficient in the performance of her assigned duties within the meaning of the code and of respondents' rules and regulations.

It stands undisputed that the procedural requirements prescribed by the code and the regulations have been minutely complied with. Thus, Betty was duly served with a notice of written charges (§ 13742). After she denied the charges and filed an appeal therefrom (§ 13743), a fair and extensive hearing was held before the Personnel Commission of the Jefferson Elementary School District ("Commission"), at which Betty was represented by Mr. Young, a field representative of the California

---

[1]The present appeal has been maintained by appellant, an employee representative organization, on behalf of its member Betty Comisky pursuant to the authority conferred upon it by Education Code, section 13084.5.

[2]Unless otherwise indicated, all references will be made to the Education Code of California.

[3]Section 13740 provides that "No person in the permanent classified service shall be demoted or removed *except for reasonable cause designated by rule of the commission as detrimental to the efficiency of the service.* This section shall not be construed to prevent layoffs for lack of work or lack of funds." (Italics added.)

School Employees Association, and was permitted to, and did, introduce oral and documentary evidence. The Commission carefully reviewed the whole record and found that the charge of inefficiency caused by excessive absences was supported by the evidence. In its detailed findings the Commission pointed out that Betty could not be depended upon to complete assigned tasks within the prescribed time; that due to her prolonged absences jobs with critical deadlines could not be assigned to her; that the workload was shifted inordinately to other employees and unfairly taxed and burdened them; and that her recurring absences impeded the overall work distribution and scheduling for the office in which she worked.

From the decision of the Commission sustaining her dismissal, Betty filed a petition for writ of mandate seeking reinstatement and related relief as a permanent employee. The trial court concluded that the findings of the Commission were supported by substantial evidence and that the decision of dismissal was supported by the findings.

As a threshold matter, we point out that the parties agree that the order of respondents dismissing Betty substantially affects a fundamental vested right and that therefore the independent judgment rule of *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] is applicable. Although the case at bench was decided prior to the rendition of the decision in *Strumsky,* the Supreme Court specifically mandated that the new rule "shall apply to all pending and future proceedings in trial courts and all pending and future appeals." (*Strumsky, supra,* at p. 45.) We need not remand the matter, however, for the parties at oral argument stipulated that the issue is purely one of law and that a remand would be an unnecessary—indeed, a futile—waste of time and resources. In short, the parties have agreed that we consider the case as if the trial court had utilized the independent judgment standard.[4]

---

[4]As a matter of fact it seems rather clear that the trial judge did just that. In his memorandum decision, the judge wrote: "The sole issue before the court may be stated as follows: Conceding that sick leave is a statutory right of a permanent classified school employee, may the school district discharge a school employee when the amount of sick leave used by said employee makes her inefficient in her work and places an unfair burden on her fellow employees. The Court recognizes the importance of protecting a permanently classified employee from an arbitrary discharge but it also recognizes the right of the school district and its tax payers to get the type of performance for which they are paying. There must be some point at which the school district has a right to protect the efficiency and morale of its many other employees and *in this Court's view,* the findings indicate that this point has been reached." (Italics added.)

A short review of the record convinces us that the finding of inefficiency by both the Commission and the trial court is overwhelmingly, if not conclusively, supported by the documentary and testimonial evidence received in the proceedings. It must be noted that the excessiveness of Betty's absenteeism is abundantly demonstrated by a recitation of the school record which, broken into school years, shows the following absences:

*1967-1968 School Year* (July 1, 1967-June 30, 1968): September 20 through November 10, 1967, industrial accident leave (i.e., "State Compensation"); January 18-19, 1968, February 2, 1968, "normal" sick leave; March 18 through April 21, 1968, industrial accident leave; May 16 through June 30, 1968, leave of absence without pay as a result of a heart attack.

*1968-1969 School Year* (July1, 1968-June 30, 1969): During September and October 1968, as a result of her heart attack, Betty worked half-days and was charged one-half day's absence without pay for each such day. July 1 through August 31, 1968, she continued on leave of absence without pay for the heart attack. During the month of November 1968, as a result of said heart attack, she worked three full and two one-half days per week and was charged with four days' absence without pay as a result thereof during that month. On February 10, 1969, she was absent for "normal" sick leave. Thereafter Betty was granted six months' leave of absence without pay as a result of a second heart attack, said period running from April 16, through September 1969.

*1969-1970 School Year* (July 1, 1969-June 30, 1970): As aforesaid, the six months leave of absence without pay commencing in April of the 1968-1969 school year ran through September of the 1969-1970 school year. Betty was then absent again December 30-31, 1969, and January 5 through January 9, 1970, on "normal" sick leave.

*1970-1971 School Year* (July 1, 1970-June 30, 1971): In September 1970 Betty requested a personal leave for 10 days. On October 23 and November 5 through November 13, 1970, she was absent on industrial accident leave. On January 4, 1971, and March 5, April 14 through April 16, May 19 through May 27, 1971, Betty was on "normal" sick leave. Commencing May 28, 1971, and running through to the commencement of the 1971-1972 school year, i.e., through August 31, 1971, she continued absent on "extended" sick leave.

*1971-1972 School Year* (July 1, 1971-May 4, 1972): As above stated, the "extended" sick leave continued to August 31, 1971. Thereafter, Betty was absent on December 10, 1971, January 10 through January 12, 1972, and April 3 through April 7, 1972, on "normal" sick leave.

In the light of this "speaking" record it requires no strenuous effort to see that absences of such frequency and magnitude as a matter of course rendered Betty's performance unreliable, inefficient and inadequate; that it worked as an impediment to the orderly conduct of the office; that it put an unfair burden on fellow employees and/or necessitated the hiring of substitute employees. This conclusion is not only the dictate of common sense, but is also borne out by the testimonial evidence adduced in the proceedings. Thus, office manager Barrera, one of Betty's supervisors, testified that Betty's absences "did disturb the office because everyone else is pretty loaded with work already and, as a matter of fact, we are sparsely manned and, therefore, any additional workload just meant that much more that someone else had to put out." He further testified that due to the lack of Betty's attendance the school had to hire two or three temporary substitutes. Mr. Barrera's testimony was corroborated by Mr. Muller who supervised Betty in her assignment as assistant librarian. Mr. Muller testified that as a result of Betty's extensive absences "Things that were there that needed to be done didn't get done."

In the face of such a revealing record, appellant fails to challenge the sufficiency of evidence supporting the finding of inefficiency and attacks the judgment on entirely different grounds. First, appellant contends that Betty performed her work efficiently when she was present; her only "fault" was that she was sick, which is not an offense punishable by discharge. Secondly, appellant maintains that Betty was not dischargeable for taking authorized leaves because, pursuant to statute, the employee must be restored to his original position at the end of the absences if he is able to assume his duties or, in the alternative, he must be put on a reemployment list for a period of 39 months if he is incapable of attending to his duties (§§ 13651.2, 13651.5). Appellant finally claims that respondents' only remedy would have been to place Betty on the reemployment list and, having failed to do so, they are now estopped from claiming inefficiency caused by authorized absences. For the reasons which follow we find none of these arguments acceptable and affirm the judgment.

■ Appellant's first assertion is obviously misplaced. The issue of whether a public employee may be dismissed for physical disability is not a novel one. There are numerous cases, both in California and elsewhere, which uphold the dismissal of a public employee who is physically or mentally unable to perform the duties called for in his position (*Gentner* v. *Board of Education* (1933) 219 Cal. 135 [25 P.2d 824]; *Riggins* v. *Board of Education* (1956) 144 Cal.App.2d 232 [300 P.2d 848]; *Tilton* v. *Board of Education* (1938) 25 Cal.App.2d 746 [78 P.2d 474]; *In re Carney* (1944) 182 Va. 907 [30 S.E.2d 789]; *Sganga* v. *Teaneck Tp.* (1943) 130 N.J.L. 218 [32 A.2d 505]; *Balacek* v. *The Board of Trustees, etc.* (1941) 263 App.Div. 712 [30 N.Y.S.2d 1007]; *Loucks* v. *Board of Education* (1940) 258 App.Div. 1003 [16 N.Y.S.2d 733]; *School Dist. No. 1* v. *Teachers' Retirement Fund Ass'n.* (1939) 163 Ore. 103 [95 P.2d 720, 125 A.L.R. 720]). It bears emphasis that the issue raised by appellant was addressed to and disposed of by the Supreme Court in *Hostetter* v. *Alderson* (1952) 38 Cal.2d 499 [241 P.2d 230]. In *Hostetter,* plaintiff was removed from his position for physical inability to perform his duty as a fireman. There, as here, the employee contended that when he was able to work he performed his job excellently and therefore his physical inability provided insufficient legal ground for his dismissal. The Supreme Court rejected his argument and concluded that physical disability resulting from illness is sufficient cause for discharging a public employee. In its underlying reasoning, the Supreme Court pointed out that in such an instance the primary consideration is not the personal fault or misconduct of the employee, but the loss of efficiency to the department and the detriment to the public stemming from the inefficient discharge of duties.[5]

■ Appellant's second argument that, pursuant to sections 13651.2 and 13651.5[6] the discharge in question was unlawful, is not meritorious

---

[5]The pertinent language in the opinion reads as follows: "It is apparent that there is no fault on the part of Hostetter or intimation that he has in any way been guilty of misconduct. *But personal fault does not appear to be the primary consideration. Misconduct is important only insofar as it affects the efficiency of the department. The loss of efficiency to the department, and the detriment to the public* which would result from lack of authority to discharge a physically disabled fireman, *is a sound basis for concluding that 'sufficient cause' should be construed as physical disability resulting from illness* not incurred in the line of duty." (*Hostetter* v. *Alderson, supra* at p. 504; see also: *O'Neal* v. *City etc. of San Francisco* (1969) 272 Cal.App.2d 869, 873 [77 Cal.Rptr. 855]; italics added.)

[6]Section 13651.2 provides in pertinent part that: "The governing board may, by rule or regulation, provide for such additional leave of absence, paid or unpaid, as it deems

either. As appears below, the code sections merely spell out that leaves of absence shall not be considered a break in service and at the end of such absences the employee must be restored to his former position if he is able to assume his duties or must be put on the reemployment list if he is not capable to resume his duties at that time. Appellant advanced no reason, and we have found none, why these provisions pertaining strictly and solely to the various types of leave should constitute any limitation or restriction on section 13740, an independent and separate provision of the Code, which for important public policy considerations secures to the schools the right to rid themselves of employees. whose work is detrimental to the efficiency of the service. ■ It is a cardinal principle that the primary rule of statutory construction to which every other rule must yield is that the intention of the Legislature should be given effect; and the language of any statute and provision therein may not be construed so as to nullify the will of the Legislature or to cause the law to conflict with the apparent purpose the lawmakers had in view

---

appropriate and during such leave the employee may return to the person's position without suffering any loss of status or benefits.

"Periods of leave of absence, paid or unpaid, shall not be considered to be a break in service of the employee. . . .

"When all available leaves of absence, paid or unpaid, have been exhausted and if the employee is not medically able to assume the duties of the person's position, the person shall, if not placed in another position, be placed on a reemployment list for a period of 39 months. When available, during the 39-month period, the person shall be employed in a vacant position in the class of the person's previous assignment over all other available candidates except for a reemployment list established because of lack of work or lack of funds, in which case the person shall be listed in accordance with appropriate seniority regulations. . . .

"An employee who has been placed on a reemployment list, as provided herein, who has been medically released for return to duty and who fails to accept an appropriate assignment shall be dismissed."

Section 13651.5 sets out in relevant part that "An employee, upon ability to resume the duties of a position within the class to which he was assigned, may do so at any time during the leaves of absence granted under this section and time lost shall not be considered a break in service. He shall be restored to a position within the class to which he was assigned and, if at all possible, to his position with all the rights, benefits and burdens of a permanent employee.

"If at the conclusion of all leaves of absence, paid or unpaid, the employee is still unable to assume the duties of his position, he shall be placed on a reemployment list for a period of 39 months.

"At any time, during the prescribed 39 months, the employee is able to assume the duties of his position he shall be reemployed in the first vacancy in the classification of his previous assignment. His reemployment will take preference over all other applicants except for those laid off for lack of work or funds under Section 13737 of this code in which case he shall be ranked according to his proper seniority. Upon resumption of his duties, the break in service will be disregarded and he shall be fully restored as a permanent employee."

(*Struckman* v. *Board of Trustees* (1940) 38 Cal.App.2d 373, 376 [101 P.2d 151]). These basic precepts especially obtain in a case where, as here, the statute embodies fundamental rights reflecting important public policy goals.

■ We conclude that the statutory provisions dealing with the various types of leaves of absence do not impose a limitation on section 13740 which confers upon the school the unrestricted right to dismiss certified permanent employees for inefficiency however caused, if it reaches the degree of becoming detrimental to the service. In the case at bench, in compliance with the code sections pertaining to leaves, Betty was restored to her former position on April 7, 1972, at the conclusion of the absences,[7] and was dismissed several weeks later for overall inefficiency based on section 13740 and regulations issued thereunder. Therefore, the charge that Betty was dismissed in violation of the statute is entirely unfounded and must be rejected.

■ Appellant's last claim, premised on the theory of estoppel, is even more meritless. ■ It is elementary that equitable estoppel lies only where someone by his words or conduct *wilfully* causes another to believe the existence of a certain state of things and *induces* him to act on that belief so as to alter his own previous position (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423]). Or as the court put it in *Seymour* v. *Oelrichs* (1909) 156 Cal. 782, 795 [106 P. 88]: " 'The vital principle is that he who by his language or conduct leads another to do *what he would not otherwise have done* shall not subject such person to loss or injury by disappointing the expectations upon which he acted . . .' " (italics added.) ■ Accordingly, in order to establish the claim or defense based on equitable estoppel there must be: (1) a *representation or concealment of material facts;* (2) made with knowledge, actual or virtual, of the facts; (3) to a party ignorant of the truth; (4) *with the intention that the latter act upon it;* and (5) *the party must have been induced to act upon it (California Milling Corp.* v. *White* (1964) 229 Cal.App.2d 469, 479 [40 Cal.Rptr. 301]. See also: *Domarad* v. *Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 555 [76 Cal.Rptr. 529]; *Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55]; 7 Witkin, Summary of Cal. Law (1974 ed.) § 132, pp. 5351-5352). Where one of these elements is missing there can be no estoppel

[7]Of incidental interest we remark that since according to her own testimony Betty was able to resume work at the end of the leaves, she was not entitled to be placed on the reemployment list as provided by sections 13651.2 and 13651.5.

(*Transport Clearings-Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405, 429 [38 Cal.Rptr. 116]; *Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326 [3 Cal.Rptr. 575]; 7 Witkin, Summary of Cal. Law, *supra*). It is likewise settled that equitable estoppel is a question of fact which must be pleaded and proved (*General Motors Accept. Corp.* v. *Gandy* (1927) 200 Cal. 284, 295 [253 P. 137]; *Fair Oaks Bank* v. *Johnson* (1926) 198 Cal. 196, 201 [244 P. 335]; 3 Witkin, Cal. Procedure (2d ed.) § 944, p. 2524).

■ It is more than obvious that under the principles outlines above appellant is not entitled to invoke the doctrine of equitable estoppel for a multiplicity of reasons. First of all, it is apparent that appellant failed to plead and prove the requisite elements of estoppel in the proceedings below. Secondly, and more importantly, the record before us is utterly devoid of any indication that respondents (1) represented or concealed material facts, or (2) wilfully induced Betty to apply for the repeated extended leaves, or (3) led her to do something that she would not otherwise have done. Quite to the contrary, it seems uncontradicted that in requesting the frequent and excessive leaves Betty was motivated by her alleged recurring sicknesses and other unspecified personal reasons, while all that respondents did was to generously accede to those requests, motivated mainly by human compassion. Under these circumstances the claim of equitable estoppel is groundless.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1975.