[No. B190441. Second Dist., Div. One. Sept. 7, 2007.]

THOMAS T. LEE, Plaintiff and Appellant, v.
BLUE SHIELD OF CALIFORNIA, Defendant and Respondent.

1370

COUNSEL

Law Offices of Russell D. Kinnier and Russell D. Kinnier for Plaintiff and Appellant.

Barger & Wolen, John M. LeBlanc and Andrew S. Williams for Defendant and Respondent.

OPINION

**ROTHSCHILD, J.**—Dr. Thomas T. Lee sued Blue Shield of California alleging that Blue Shield wrongfully suspended him from its network of medical providers for alleged medical incompetency, unlawfully denied him an administrative hearing on the issue of his competency and then illegally terminated his provider contract based on his alleged failure to cooperate in the administrative process. Lee seeks damages and declaratory relief but not reinstatement as a provider. The trial court sustained Blue Shield's demurrer

without leave to amend on the ground that Lee had not exhausted his administrative remedies. Lee filed a timely appeal from the judgment dismissing his action.

The trial court correctly sustained Blue Shield's demurrer to Lee's contract and tort causes of action. Exhaustion of the administrative remedy under Business and Professions Code sections 809 through 809.9[1] (commonly referred to as an "809 hearing") is a prerequisite to Lee's recovery of damages for wrongful suspension and termination as a Blue Shield physician, and Lee admits he has not exhausted that remedy. The trial court erred, however, in sustaining the demurrer to Lee's cause of action for declaratory relief. Instead, the court should have treated Lee's cause of action for declaratory relief as a petition requesting the court to issue a writ of mandate ordering Blue Shield to vacate its decision terminating his provider status for failure to cooperate with the 809 hearing and to reinstate the 809 proceedings.

## FACTS AND PROCEEDINGS BELOW

### A. *The Peer Review Hearing Process—Statutory Background.*

We briefly summarize the peer review hearing process applicable to hospitals extending privileges to doctors and to health care service plans such as Blue Shield contracting with doctors as medical providers. (§§ 809–809.9.)

■ Under the statutory scheme, if a " 'peer review body' " (§ 805, subd. (a)(1)) proposes to terminate a physician's membership in the organization for "a medical disciplinary cause or reason" (§ 805, subd. (b)(1)) or if it immediately suspends the physician on the ground that its failure to do so may result in "an imminent danger to the health" of a patient (§ 809.5, subd. (a)), the physician is entitled to notice and an administrative hearing. (§ 809.1, subd. (b).) A peer review body includes a health care service plan. (§ 805, subd. (a)(1)(B).) Blue Shield concedes it is a health care service plan subject to the 809 hearing procedure.

■ Section 809.2, subdivision (a), states: "The hearing shall be held, as determined by the [plan], before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the [doctor] and the

---

[1] All statutory citations are to the Business and Professions Code unless otherwise specified.

[plan], or before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome, who have not acted as an accuser, investigator, factfinder, or initial decisionmaker in the same matter, and which shall include, where feasible, an individual practicing the same specialty as the [doctor]." The panel may select a hearing officer to preside at the hearing but is not required to do so. (§ 809.2, subd. (b).)

■ When an 809 hearing is requested by a doctor, the plan "shall bear the burden of persuading the trier of fact [i.e. the hearing panel] by a preponderance of the evidence that the action or recommendation is reasonable and warranted." (§ 809.3, subd. (b)(3).)

Section 809.2, subdivisions (d) and (f), describe the discovery rights of the doctor and the plan and the remedies if either party fails to comply with the discovery process.

Section 809.2, subdivision (d), gives the doctor and the plan the right to inspect and copy "any documentary information relevant to the charges" in the opposing party's possession or control, subject to certain restrictions. Subdivision (d) further provides that the hearing panel "shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." Finally, subdivision (d) states that a party's failure to provide the requested information "shall constitute good cause for a continuance."

■ Section 809.2, subdivision (f), provides that "[a]t the request of either side, the parties shall exchange lists of witnesses expected to testify and copies of all documents expected to be introduced at the hearing." As in subdivision (d) of section 809.2, quoted above, a party's failure to timely exchange witness lists and copies of documents "shall constitute good cause for a continuance."

■ Of particular importance to this case, 809 hearings apply only to proposed terminations and suspensions that are taken for a " '[m]edical disciplinary cause or reason' " which is defined as "that aspect of a [doctor's] competence or professional conduct that is reasonably likely to be detrimental to patient safety or to the delivery of patient care." (§ 805, subd. (a)(6); see § 809.1, subd. (a).)

B. *Summary of the Facts.*

For purposes of this appeal, we accept as true the properly pleaded factual allegations of the complaint. (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728].)

Lee is an obstetrician and gynecologist licensed to practice medicine in California. Blue Shield is a health care service plan. At the time of the events leading to this litigation, Lee had been a Blue Shield health care provider for 15 years.

Blue Shield proposed to terminate Lee as a provider based on concerns about the quality of his medical care and gave Lee notice of his right to an 809 hearing. Lee timely requested a hearing. Blue Shield and Lee agreed on two persons, a doctor and a lawyer, to serve as the hearing panel.

While the hearing on Lee's proposed termination was pending, Blue Shield notified Lee it was summarily suspending his provider status because he posed "an imminent danger" to the health of his patients.[2] The proposed termination and summary suspension were consolidated for the 809 hearing.

Two weeks before the scheduled start of the 809 hearing, Blue Shield notified Lee's counsel by telephone that "Blue Shield was no longer going to participate in the administrative process and that it was terminating Dr. Lee's contract for Dr. Lee's alleged 'failure to cooperate with the peer review process.' " According to Lee, "No further opportunity was provided to Dr. Lee's counsel to respond to the issues raised by Blue Shield's counsel, and no effort whatsoever was made by Blue Shield's counsel to seek the assistance of the hearing panel to resolve this perceived 'failure to cooperate' on the part of Dr. Lee's counsel." Three days after this conversation between counsel for Blue Shield and Lee, "Blue Shield notified Dr. Lee and the hearing panel, in writing, that it was abandoning the fair hearing process and terminating Dr. Lee's contract. The same day, counsel for Dr. Lee spoke with [a member of the hearing panel] and was told that as a result of Blue Shield's actions in terminating Dr. Lee's contract, the hearing panel no longer had any authority to conduct the administrative hearing."

---

[2] Section 809.5, subdivision (a) states a plan "may immediately suspend or restrict clinical privileges of a [doctor] where the failure to take that action may result in an imminent danger to the health of any individual, provided that the [doctor] is subsequently provided with the notice and hearing rights set forth in Sections 809.1 to 809.4, inclusive."

Based on these facts Lee alleges violation of the statutes governing 809 hearings, violation of the common law right to fair procedure, breach of contract, various business torts and entitlement to declaratory relief. As previously noted, the trial court sustained Blue Shield's demurrer without leave to amend and dismissed the action on the ground that Lee failed to exhaust his administrative remedies.

## DISCUSSION

I. *ASSUMING THE TRUTH OF LEE'S ALLEGATIONS, BLUE SHIELD VIOLATED THE 809 HEARING PROCESS BY TERMINATING THE HEARING BASED ON ITS ALLEGATION THAT LEE FAILED TO COOPERATE WITH DISCOVERY.*

Blue Shield argues that Lee's termination was not justiciable in an 809 hearing because it was not based on a medical disciplinary cause or reason; it was based on Lee's failure to cooperate with the hearing. In the alternative Blue Shield argues that if Lee's termination was justiciable in an 809 hearing, his complaint fails because he admits that he did not exhaust his administrative remedy.

Lee argues that once Blue Shield terminated his provider contract, his 809 hearing remedy was no longer available and therefore he was entitled to bring a civil action for damages arising from the wrongful suspension of his provider status and the subsequent wrongful termination of his provider contract.

Before Lee can seek damages for the wrongful suspension or wrongful termination of his provider contract he must exhaust the 809 hearing remedy, including seeking judicial review of the hearing decision should the suspension or termination be upheld. We conclude, however, that the trial court should have treated Lee's cause of action for declaratory relief as a petition requesting the court to issue a writ of mandate ordering Blue Shield to vacate its decision terminating his provider status for failure to cooperate with the 809 hearing and to reinstate the 809 proceedings.

Assuming the truth of Lee's factual allegations, Blue Shield terminated Lee's provider contract because he was not cooperating with Blue Shield's discovery requests related to the 809 hearing. This was a violation of Lee's rights under the statutes governing the hearing process.

There is no suggestion in the statutes governing the 809 hearing process that the Legislature intended to authorize a plan to arrogate to itself the power to adjudicate its own claim of discovery abuse and to impose a terminating sanction while denying the doctor an opportunity to be heard on the issue. Yet, according to Lee, this is what happened.[3]

We find no merit in Blue Shield's argument that because noncooperation is not a medical disciplinary cause or reason for termination it could terminate Lee for noncooperation without taking the matter to the 809 hearing panel. Terminating Lee's provider status for failing to cooperate in discovery is equivalent to terminating him for medical incompetency because the *effect* of the termination sanction is to let stand the plan's proposed termination or suspension based on alleged medical incompetency which was the cause of the request for a hearing in the first place.

We are not proposing that by refusing to cooperate with discovery a doctor can cause the 809 hearing to be continued indefinitely. There comes a time when a doctor forfeits the right to a hearing because of persistent disruptive and delaying tactics. (See *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531, 561 [27 Cal.Rptr.3d 171] [hearing terminated for doctor's repeated acts of misconduct including failure to produce documents].) But the decision as to when that time has arrived must be made by the hearing panel in the course of the 809 hearing itself after affording the doctor notice and an opportunity to be heard. If a plan is allowed to abandon an 809 hearing and terminate the doctor for allegedly failing to cooperate, nothing would prevent a plan from jettisoning the hearing process whenever it believed it was going to lose the hearing.

## II. *THE TRIAL COURT ERRED IN NOT TREATING LEE'S CAUSE OF ACTION FOR DECLARATORY RELIEF AS A PETITION FOR A WRIT OF MANDATE.*

### A. *Principles Governing Review of an Order Sustaining a Demurrer Without Leave to Amend.*

In reviewing an order sustaining a demurrer, "[w]e must liberally construe the allegations of the complaint with a view to attaining substantial justice

---

[3] We need not decide in this case whether the authority to impose discovery sanctions rests with the hearing officer or the hearing panel. (See *Mileikowsky v. West Hills Hospital and Medical Center* (2007) 154 Cal.App.4th 752 [64 Cal.Rptr.3d 888].) Our point is that under no circumstances could those sanctions be imposed by a plan.

among the parties." (*Haller v. Burbank Community Hospital Foundation* (1983) 149 Cal.App.3d 650, 655 [197 Cal.Rptr. 45].) Moreover, "a demurrer should not be sustained if the moving party has alleged facts entitling him to some sort of relief under any possible legal theory." (*Ibid.*)

With these principles in mind we conclude that the trial court erred in sustaining Blue Shield's demurrer based on Lee's alleged failure to exhaust his 809 hearing remedy.

> B. *Lee Cannot Obtain Damages for Wrongful Suspension of His Provider Status Until He Exhausts His 809 Hearing Remedy.*

Before Lee can recover damages for Blue Shield's wrongful suspension of his provider status for medical incompetency, he must first exhaust his administrative remedy through an 809 hearing and seek judicial review of an unfavorable hearing decision. (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 485–486 [131 Cal.Rptr. 90, 551 P.2d 410].) Lee, however, contends that because Blue Shield subverted the 809 hearing it forfeited the right to demand that Lee comply with the administrative remedy. We disagree. Blue Shield's mistaken belief that it had a right to terminate the hearing does not remove its initial finding that Lee is a threat to the health and safety of his patients. (*Westlake Community Hosp. v. Superior Court,* *supra,* 17 Cal.3d at p. 484, fn. 9.) The only way for Lee to remove that cloud over his medical competency is through the 809 hearing process. (*Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 114 [26 Cal.Rptr.3d 744].)

> C. *The Trial Court Erred in Not Treating the Cause of Action for Declaratory Relief as a Petition for a Writ of Mandate.*

 A complainant's remedy for the arbitrary or improper refusal by an organization to hold a hearing is an order directing the organization to do so. (*Haller v. Burbank Community Hospital Foundation, supra,* 149 Cal.App.3d at p. 658.) Such an order is usually obtained through a petition for a writ of mandate. But not always. Regardless of how a pleading is labeled or a prayer is framed, "[a] court may grant any relief consistent with the case made by the petitioner and embraced within the issue." (*Haller v. Burbank Community Hospital Foundation, supra,* 149 Cal.App.3d at p. 659.)

A complaint for declaratory relief "may be regarded as a petition for a writ of mandate." (*Hostetter v. Alderson* (1952) 38 Cal.2d 499, 500 [241 P.2d

230].) In *Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981], the court held that Boren erred in seeking review of a State Personnel Board decision through an ordinary civil action instead of petitioning for a writ of administrative mandate under Code of Civil Procedure section 1094.5 or a writ of certiorari under Code of Civil Procedure sections 1067 through 1077. The court went on to state: "As against a general demurrer, however, it is unimportant that plaintiff's pleading was not in form a petition for mandamus or certiorari. All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus or certiorari has been stated, the general demurrer should have been overruled." (*Boren*, at p. 637.)

The allegations in Lee's complaint are sufficient to warrant treating his cause of action for declaratory relief as a petition for a writ of mandate. Lee's complaint alleges Blue Shield informed him it was not going to participate further in the 809 hearing because Lee had not produced certain documents it had requested. Blue Shield also stated that it had terminated Lee's provider contract due to his " 'failure to cooperate with the peer review process.' " Three days later Blue Shield notified Lee and the hearing panel, in writing, that it was abandoning the hearing process and terminating Lee's contract. Later that same day a hearing officer informed Lee that in light of the termination of his contract the panel no longer had any authority to conduct the administrative hearing. The hearing officers closed the hearing without making any determination regarding Lee's alleged medical incompetency or failure to comply with Blue Shield's discovery requests.

If Lee can prove these allegations and if he can establish that Blue Shield failed to adhere to the appropriate administrative processes under the statutes governing 809 hearings (see in particular § 809.2, subds. (d) and (f) governing discovery), Lee would be entitled to a writ of mandate directing Blue Shield to set aside its termination of Lee's provider contract (but not the suspension), reconvene a hearing pursuant to the provisions of section 809.1, and comply with the provisions of the peer review hearing process.[4]

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions to vacate its order sustaining defendant's demurrer and issue a new order sustaining the demurrer without leave to amend as to all causes of action except the cause of action for declaratory relief, which the court shall

---

[4] We are aware that Lee's original complaint included a cause of action for a writ of mandate but that he did not include that cause of action in his first or second amended complaints, but do not believe that fact affected the trial court's right to treat the declaratory relief cause of action as a petition for writ of mandate once it became clear a judgment would otherwise have to be entered for defendant.

treat as a petition for a writ of mandate. The parties shall bear their own costs on appeal.

Vogel, Acting P. J., and Jackson, J.,* concurred.

A petition for a rehearing was denied October 1, 2007, and the opinion was modified to read as printed above.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.