[Civ. No. 24806.   First Dist., Div. One.   May 14, 1969.]

ROBERT A. O'NEAL, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

Hersh & Hadfield and James D. Hadfield for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Michael C. Killelea, Deputy City Attorney, for Defendant and Respondent.

ELKINGTON, J.—This appeal was taken from an order denying a peremptory writ of mandate, the effect of which was to uphold the removal by the San Francisco Police Commission of a policeman, plaintiff and appellant Robert A. O'Neal.

We are required, as was the superior court, to determine if there was any substantial evidence before the commission in support of its decision. We may not weigh evidence, determine the credibility of witnesses or resolve conflicts. (*Sultan Turkish Bath, Inc.* v. *Board of Police Comrs.*, 169 Cal.App.2d 188 [337 P.2d 203].) We therefore state the evidence as it tends to support the commission's determination.

O'Neal became an officer of the San Francisco Police Department in July 1959. By October 4, 1963 he had acquired a history of "grand mal" epileptic seizures. On that day, while fishing in a boat, he suffered such a seizure, which resulted in his unconsciousness for 40 minutes. Later that day while on police duty he responded to a call. Talking to the complainant he suddenly became unconscious and fell down a flight of stairs. He stiffened out, gave a series of "rhythmic convulsive jerking movements, involving both arms and legs. He turned blue, did not breathe for a short time." He awakened one and a half hours later "disoriented, confused and sore."

Medical evidence indicated the following. O'Neal's seizure was diagnosed as a typical "grand mal" convulsion, "not due to nor aggravated by his work or any injury in the course of his work." Such a condition is not considered curable. "The possibility of a sudden unexpected convulsive seizure is ever present and would render the affected [policeman] totally incapable of protecting himself from the constant hazards of his duties." A person so afflicted should not operate an automobile[1] and it "seems unwise for Mr. O'Neal to handle firearms."

---

[1]Vehicle Code section 12805 provides: "The department shall not issue or renew a driver's license to any person: . . . (d) Who is an epileptic." But see Vehicle Code section 12806, providing: "(a) Any physical or mental defect of the applicant which in the opinion of the department does not affect the applicant's ability to exercise reasonable and ordinary

The department requested O'Neal's resignation for the expressed reason that he was unable to properly perform his duties as a policeman. Upon his refusal, a specification of charges was filed with the police commission alleging, among other things: "That by reason of the physical condition of said Officer Robert A. O'Neal, as hereinabove indicated, he was, during all the times hereinabove mentioned, is presently and will be in the future unable to fully comply with and properly perform the duties and responsibilities of a police officer as provided by Rule 2.01 of the Rules and Procedures of the San Francisco Police Department, which reads as follows: '*Duties and Responsibilities*: 2.01. The Police Department and its members shall have the power and it is their duty to: .1 Prevent Crime. .2 Protect Life and Property. .3 Detect and Arrest Offenders. .4 Preserve the Public Peace. .5 Enforce all Penal Laws and Ordinances.' and does therefore violate the provisions thereof."

Thereafter O'Neal was afforded a full police commission "trial" throughout which he was represented by counsel. No complaint is made concerning the conduct of the hearing, or its notice or fairness. Evidence, including that hereinbefore stated, was elicited. At the conclusion the commission rendered its decision dismissing O'Neal from the department "on the ground that he is and will be unable to perform the duties of a police officer as set forth in Section 2.01 of the Rules and Procedures of the Police Department." The instant mandamus proceedings followed.

O'Neal contends that his physical inability to perform a policeman's duties is not an offense or violation of department rules and that therefore the commission lacked jurisdiction to dismiss him for that reason.

The authority to dismiss O'Neal is found in section 155 of the Charter of the City and County of San Francisco. That section provides, as relevant here: "Members of the fire or the police department guilty of any offense or violation of the rules and regulations of their respective departments, shall be liable to be punished by reprimand, or by fine not exceeding one month's salary for any offense, or by suspension for not to exceed three months, or by dismissal, after trial and hearing by the commissioners of their respective departments; . . . [ ¶ ] Subject to the foregoing *members of either department shall not be subject to dismissal, nor to punishment for*

control in operating a motor vehicle upon the highway shall not prevent the issuance of a license to the applicant . . . . "

any breach of duty or misconduct, *except for cause,* nor until after a fair and impartial trial before the commissioners of their respective departments, . . ." (Italics added.) This section expressly authorizes *dismissal for cause* even though there be no intentional breach of duty or misconduct.

In *Hostetter* v. *Alderson,* 38 Cal.2d 499, 501 [241 P.2d 230], the Supreme Court upheld the dismissal of Hostetter, a Los Angeles fireman for " 'physical inability to properly perform the duties required.' " The court stated (p. 504): "In numerous decisions, the discharge or retirement of public employees physically or mentally unable to perform the duties called for in their positions has been upheld. [Citations.] . . . [ ¶ ] It is apparent that there is no fault on the part of Hostetter or intimation that he has in any way been guilty of misconduct. But personal fault does not appear to be the primary consideration. Misconduct is important only insofar as it affects the efficiency of the department. The loss of efficiency to the department, and the detriment to the public which would result from lack of authority to discharge a physically disabled fireman, is a sound basis for concluding that 'sufficient cause' should be construed as physical disability resulting from illness not incurred in the line of duty."

We conclude that cause for the dismissal of O'Neal was established at the police commission hearing.

O'Neal contends that he was charged with an offense to which he pleaded not guilty; that he was found guilty and punished although the evidence established neither offense nor cause for punishment.

It is true that the specification of charges superficially took the form of charging an offense. However, it is clear that their substance was simply that O'Neal could not reasonably perform the duties of his office. At no time, in the charge or at the hearing or otherwise, was there any actual contention of "misconduct" or of an "offense." Nor was there any demand for "punishment." Despite his instant contention, O'Neal seems to recognize this. In his brief he says, *"The charges briefly stated were that Officer O'Neal was physically disabled and could not perform the duties of members of the Police Department."* (Italics added.)

In *Hostetter* v. *Alderson, supra,* 38 Cal.2d 499, 503-504, Hostetter made a similar contention. The court stated: "Although the phraseology of section 135 is somewhat inartistic, it does not necessarily mean that by inclusion of language possibly indicating a primary intent to punish for misconduct,

inability to perform the duties of the position should not also be ground for removal. A comparable provision is found in the Government Code in sections 19570 et seq. which concern disciplinary proceedings before the Civil Service Commission. Section 19570 defines 'punitive action' as dismissal, demotion, suspension, or other disciplinary action. Section 19572, which for the most part enumerates acts of misconduct as cause for discipline, includes physical and mental disability. [ ¶ ] A more pertinent inquiry is that of the basic policies behind this type of charter provision. In other jurisdictions having municipal charter provisions similar to the present one, it has been held that the best efficiency is obtained in public service when personnel are selected according to qualifications and positions are retained without fear of removal for reasons of local politics. [Citation.] Courts have also upheld the policy that the public is best served when department officials are permitted to eliminate unqualified or undesirable personnel, and to replace them with persons better qualified. [Citations.] ''

While it would seem to be better practice to have simply alleged that O'Neal, by reason of illness or physical disability, was unable properly to perform the duties of his office, we see no error, or prejudice to O'Neal, in the form taken by the proceedings.

An additional contention of O'Neal is that the commission's decision is not supported by evidence. There was no dispute that O'Neal had in fact suffered the epileptic seizures hereinbefore alluded to. A conflict existed as to the probability of future attacks and the frequency or severity of such attacks. This conflict was resolved against O'Neal by the commission. The superior court thereafter determined that there was substantial evidence in support of the commission's determination. We see no merit in the instant contention.

O'Neal's final contention is that his dismissal was discriminatory. He points out that other police officers who were diabetics, overweight, wheelchair bound, polio victims, and who had crippled hands have been retained and assigned to less active and light duties. He insists that he has thus been deprived of a vested right, his civil service tenure.

It has been said that a public employee has no vested right to public employment and he may be discharged in the manner prescribed by law. (*Malter of Carter,* 141 Cal. 316, 319 [74 P. 997]; *Boutwell* v. *State Board of Equalization,* 94 Cal.App.2d 945, 950 [212 P.2d 20]; *Redding* v. *City of Los Angeles,* 81 Cal.App.2d 888, 901 [185 P.2d 430].) In *Redding,*

a police officer was dismissed after hearing as provided by the city's charter. The court said at pages 900-901: ''It was not intended either by the citizens of Los Angeles or by the Legislature that by the employment of a person as a member of the police force he thereby becomes 'owner' of the office in the same sense that he owns his horse or his home. (See *Boyd* v. *Pendegast,* 57 Cal.App. 504, 506 [207 P. 713]; 46 C.J. 932.) Not only may the law provide for the removal of an incumbent official but the latter's right to his office perishes with the order for his discharge when it results from an adherence to statutory procedure required for his dismissal for cause. (*In re Carter,* 141 Cal. 316, 319 [74 P. 997].)''

O'Neal quotes language of *Redding, supra,* stating that a civil service ''position as a member of the police force was a substantial property right of which [the policeman] shall not be deprived arbitrarily or summarily.'' He cites also *Reed* v. *City Council of City of Roseville,* 60 Cal.App.2d 628, 636 [141 P.2d 459]; and *Eisenhuth* v. *Department of Motor Vehicles,* 2 Cal.App.2d 207, 214 [37 P.2d 725], to the same effect. It is noted that these cases hold that the employee may nevertheless be dismissed, provided that such dismissal is not arbitrary. In the case at bench O'Neal's dismissal cannot be considered arbitrary.

Nor can we agree that when a police department endeavors to take care of disabled officers by assigning them to nonpolice duties, that all disabled officers thereupon acquire a vested right to assignment to such duties. Such considerations must be left to the police department. O'Neal furnishes us no authority in support of this contention.

We note evidence that in 1956 there were 77 men in the department assigned to permanent light duty positions. In that year permanent light duty assignments were discontinued, and the men holding these positions were either certified for regular duty or ordered to retire. Only one officer remains in that category; he was disabled in the Korean War, and under the GI Bill of Rights is considered entitled to continue in his office. Only temporary light duty assignments are now available; such assignments are given to officers while they are recovering from temporary ailments or other disabilities.

The order is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 9, 1969.