[Civ. No. 28006. First Dist., Div. Two. June 22, 1971.]

HERMAN M. BARBER, Plaintiff and Appellant, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Respondents.

## Counsel

Charles P. Scully and Donald C. Carroll for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Donald J. Garibaldi, Deputy City Attorney, for Defendants and Respondents.

## Opinion

**TAYLOR, J.**—Herman M. Barber appeals from an order denying his petition for a writ of mandate directing respondent, Retirement Board of the City and County of San Francisco (hereafter Board) to vacate its directive compelling him to retire pursuant to section 171.1.3 of the city charter because of a permanent disability incurred in the performance of duty. Barber contends: 1) the Board construed section 171.1.3 of the charter in an unreasonable manner; 2) the civil service commission's finding that he was medically qualified in a prior final proceeding was res judicata; 3) the Board's finding that he was unable to perform "his duty"

was not supported by substantial evidence; and 4) in any event, the chief of the fire department (hereafter Chief) acted arbitrarily and in violation of the procedure prescribed by the charter.

The record reveals the following facts: Barber, a 41-year-old fireman with over 20 years' experience, on June 18, 1966, while employed as a hoseman responding to an alarm, lost his right leg. Barber returned to duty in November 1967 as a hoseman with an artificial leg, and was assigned by the Chief to the Bureau of Assignments, where his duties consisted of daily administrative work.

Barber performed the same tasks as the lieutenants with whom he worked, and after a year and a half decided to take the lieutenant's examination. He passed and was placed on the list, but was rejected because of his amputation. He appealed the medical rejection to the civil service commission (hereafter Commission). At the hearing held on March 24, 1969, the Commission found Barber to be medically qualified to be a lieutenant in the fire department. After the Chief petitioned the Commission for a reconsideration, a further hearing was held on April 21, 1969. The Commission heard testimony from the Chief and the fire department physician. After the latter stated that there were duties in the department that Barber could fill, the Commission denied reconsideration; that decision became final as the Chief did not seek judicial review.

On May 1, 1969, the Chief appointed Barber as a probationary lieutenant and assigned him to the Training Division where Barber instructed and trained his fellow firemen. On May 13, 1969, the Chief petitioned the Board to retire Barber pursuant to section 171.1.3 of the city charter, a compulsory retirement provision.

Between the time of the hearing before the Commission and that before the Board, Barber suffered no new injury or change in his leg or condition of general health. At the hearing before the Board, the Chief testified that since Barber had received a 77 percent disability rating, he was incapable of doing the work, not only as a lieutenant "but as a fireman." The Chief had placed Barber in the Bureau of Assignments on a temporary basis to help in his rehabilitation. While the Chief could terminate Barber's position as a probationary lieutenant, the Chief felt it would be more dignified to retire him. The Chief was not satisfied with the Commission's finding that Barber was medically qualified to be a lieutenant in the department. In the Chief's opinion, Barber was not qualified and could not do the work of a fireman. Barber would have to be capable of doing everything that a fireman might be called upon to do, including responding to alarms, jumping across lightwells, going down gables, etc.

Two lieutenants were permanently assigned to the Bureau of Assignments, a clerical bureau, but had 35-40 years of seniority and the Chief had to take care of men with seniority. The Chief testified that there were 227 lieutenants in the department, and "we cannot have men select the positions they would like." As there was no room for an additional lieutenant in the Bureau of Assignments, Barber, after becoming a probationary lieutenant, was assigned to the Division of Training. Although the Chief had not observed Barber at work in the Training Division, he testified that he knew that Barber was not capable of doing the work, namely, climbing ladders, "locking in" (i.e., position the feet on the ladder so that the arms are free for other work), teaching others to do so, or leading a company. Lieutenants in the Training Division are required to be able to go out on every fourth alarm, except for one elderly officer who had had a cholostomy. The Chief testified that there was no room for Barber in the fire department; that in the past, men with leg amputations had always been retired. Barber's return to the department was only temporary and for his rehabilitation.

Barber testified that he was able to climb ladders, "lock in" and perform all duties required at the Training Division. His biggest recreation since the accident was skiing. He also taught skiing and rode horses. He could not perform the duties of a full lieutenant in a fire fighting company, but there were jobs in the department that he could do. He knew of several men with rank in the department who were not fully capable of performing all of the duties they might be called upon to perform. None of these men were assigned to fire fighting companies, but were in assignments, such as the Division of Training.

The Chief, however, indicated that all of these men were merely on temporary light duty assignments until they recovered from their disabilities. The only permanent light duty positions were in the Bureau of Assignments and were currently filled by two officers with more seniority and experience than Barber. The Chief had no permanent light duty positions in the entire department for a person of Barber's rank and condition. The addition of another lieutenant in this clerical bureau would constitute an unwarranted and unnecessary expense for the city.

The Board found Barber to be "incapacitated for the performance of his duty" pursuant to section 171.1.3 of the charter and directed that he be retired. On August 20, 1969, Barber filed his petition for a writ of mandate in the instant proceeding. Thereafter, the trial court entered its judgment denying the writ of mandate as the finding of the Board was supported by substantial evidence, and this appeal ensued.

■ Barber first contends that the Chief's interpretation of the term "his duty" in section 171.1.3 of the charter[1] to mean *any and all duties that are performed by firemen* appears unreasonable and arbitrary in view of the evidence that some men in the fire department were assigned to permanent limited duty positions. We see merit in this contention. As there is no judicial or legal construction of the term as used in the city charter provisions, the question is one of first impression. ■ The courts will ordinarily follow a contemporaneous administrative construction of a statute which is reasonably susceptible of more than one interpretation but such a construction cannot be followed where it is clearly erroneous (*Hoyt v. Board of Civil Service Commrs.,* 21 Cal.2d 399, 407 [132 P.2d 804]).

■ We think that in view of the well recognized public policy favoring the employment and utilization of physically handicapped persons (Welf. & Inst. Code, § 10650), the Chief's interpretation here was too broad. Under the circumstances, where there were permanent light duty assignments, a narrower construction declaring "his duty" in section 171.1.3 to refer to *duties required to be performed in a given permanent assignment within the department* would be more reasonable.

■ Barber next contends that the finding of fact of the civil service commission with respect to his medical condition is res judicata and cannot be contradicted by the Board. He relies on *French* v. *Rishell,* 40 Cal.2d 477 [254 P.2d 26], which held that a finding of fact made by the Industrial Accident Commission that the death of a captain of the Oakland Fire Department proximately resulted from an injury occurring in the course of and arising out of his employment was res judicata with respect to his widow's claim of a right to receive a pension. There, as here, it was admitted that the city had failed to seek any review of the Commission's award which had become final.

The Supreme Court said at page 479: "The doctrine of res judicata is applicable where the identical issue was decided in a prior case by a final judgment on the merits and the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication," and at page 482: "It is immaterial that the pension board was not a party to the Industrial Accident Commission proceeding. The city, which is not only a party herein but the real party in interest, was also a party to and appeared in the prior proceeding. Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, it is bound by

---

[1]So far as here pertinent, the section provides: "Any member of the fire department who becomes incapacitated for the performance of *his duty* by reason of any bodily injury received in, or illness caused by performance of his duty, shall be retired." (Italics added.)

the commission's decision if the city is bound." The identical reasoning applies here, as the city was a party to the proceeding before the Commission (cf. *Flaherty* v. *Board of Retirement,* 198 Cal.App.2d 397, 402 [18 Cal.Rptr. 256]).

Accordingly, the Board was bound by the Commission's final determination that Barber was medically fit to be a lieutenant in the fire department. However, at the time the Commission heard the matter, Barber had been assigned to light duty with the Bureau of Assignments where there were lieutenants with seniority performing similar work. The Commission's ruling must be considered within this context and is not to be interpreted as a finding that Barber was physically fit to fill any and all lieutenancies within the department, regardless of the type of duty required. The record discloses that there was no place for an additional lieutenant in the Bureau of Assignments and that there were no permanent light duty positions *available* for a person of Barber's rank and condition elsewhere in the entire department.

We conclude, in view of the very limited nature of judicial review after a decision by a local administrative agency (*O'Neal* v. *City etc. of San Francisco,* 272 Cal.App.2d 869 [77 Cal.Rptr. 855]) that, although the Chief misinterpreted *the duties of a fireman* under section 171.1.3, there was sufficient substantial evidence to support the Board's order on the ground that there was *no available lieutenancy* within the department which Barber was physically capable of occupying. As we may not weigh evidence, determine credibility, or resolve conflicts (*Sultan Turkish Bath* v. *Board Police Comrs.,* 169 Cal.App.2d 188 [337 P.2d 203]), we are bound by the Chief's testimony that Barber could not perform in the Training Division, where a lieutenant must be able to go out on occasional alarms, and that the only permanent light duty positions were in the Bureau of Assignments, and these were filled. Barber himself admitted that he could not command a fire fighting company.

*O'Neal* v. *City etc. of San Francisco, supra,* is on all fours with the instant case. In *O'Neal,* a San Francisco policeman who had acquired incurable epileptic seizures and was retired pursuant to section 171.1.3., argued that he had been deprived of his vested right to civil service tenure as there were other police officers on active duty who were diabetics, overweight, wheelchair bound, polio victims or had crippled limbs. In holding that his compulsory dismissal was not arbitrary, this court (Division One) said at page 875: "Nor can we agree that when a police department endeavors to take care of disabled officers by assigning them to nonpolice duties, that all disabled officers thereupon acquire a vested right to assignment to such duties. Such considerations must be left to the police depart-

ment." (See also *Dobbins* v. *City of Los Angeles*, 11 Cal.App.3d 302 [89 Cal.Rptr. 758].) Similarly, here, the Chief's discretion in running the fire department should not be interfered with unless arbitrarily exercised.

We turn, therefore, to Barber's final contention, that in any event, the Chief erred and acted arbitrarily in failing to give written notice of his termination as required by section 148 of the charter.[2] The purpose of the notice requirement is to insure that the police or fire chief does not act arbitrarily or capriciously but instead acts reasonably and upon substantial evidence (*Puckett* v. *City and County of San Francisco*, 208 Cal. App.2d 471, 475 [25 Cal.Rptr. 276]). We do not think that the notice requirement of section 148 was technically applicable here since Barber was not being terminated, but compulsorily retired. However, even in the absence of such a provision with respect to section 171.1.3, a requirement of acting reasonably and upon substantial evidence must be read into the compulsory retirement provision. The fact that the Chief here had the power to terminate Barber as a probationary lieutenant, but chose not to do so—and instead followed the retirement procedure used for other amputees in the department, indicates an absence of arbitrary action. Nor do we think that the public policy in favor of continuing the employment of persons with serious physical disabilities required the Chief to shift one of the experienced officers with seniority in a permanent light duty position in the Bureau of Assignments, to make room for Barber.

The judgment denying the writ of mandate is affirmed.

Shoemaker, P.J., and Kane, J., concurred.

A petition for a rehearing was denied July 22, 1971, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1971. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.

---

[2]The pertinent provision of this section provides: "Any appointment to a position declared permanent by the civil service commission shall be on probation for a period of 6 months. . . . At any time during the probationary period the appointing officer may terminate the appointment upon giving written notice of such termination to the employees and to the civil service commission specifying the reasons for such termination. Except in the case of uniformed members of the police and fire departments the civil service commission shall inquire into the circumstances."