[Civ. No. 53119. First Dist., Div. Three. Jan. 31, 1983.]

MICHAEL R. O'TOOLE, Plaintiff and Respondent, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF
SAN FRANCISCO, Defendant and Appellant.

COUNSEL

George Agnost, City Attorney, and Dan Maguire, Deputy City Attorney, for Defendant Appellant.

Michael S. Hebel, Stephen Warren Solomon, Ralph B. Saltsman, Carole A. Solomon and Emanuel Cowitt for Plaintiff and Respondent.

OPINION

**FEINBERG, J.**—The Retirement Board of the City and County of San Francisco (Board) appeals from a judgment granting respondent Michael R. O'Toole's (O'Toole) petition for writ of mandate directing the Board to set aside its decision denying O'Toole retirement benefits. The issue for this court is whether there is substantial evidence to support the trial court's finding that there were no permanent light duty assignments available for O'Toole.

*Facts*

On August 25, 1977, O'Toole, a 33-year-old policeman with 6½ years of service, filed an application pursuant to San Francisco Charter section 8.559-3 for an industrial disability retirement. In September 1971, while in the performance of his duty, he sustained a bilateral inner ear injury that resulted in diminished hearing, persistent ringing in his ears and episodes of dizziness. O'Toole can generally hear normal sounds and conversations and the dizziness

is not so severe as to affect his driving. Neither party disputes the fact that O'Toole can no longer perform all of the duties of a police officer. The medical opinions agree that he should not be placed in a situation where there is significant risk of loud noise exposure.

After his injury, O'Toole worked as public affairs officer for the police department. He was exempt from carrying a weapon, firing at the police range on a quarterly basis, and participating in the department's semiannual physical requalification tests. O'Toole continued to work as public affairs officer from the date that the retirement application was filed in 1977 until he resigned from the police department in March 1979 to take a position at Pacific Telephone and Telegraph Company.

On April 4, 1979, and June 20, 1979,[1] hearings were held before the Board regarding O'Toole's application for a pension. The Board voted four to one that the ear and imbalance problems were industrial in nature but found by an identical vote that these problems were not so disabling as to entitle O'Toole to an industrial pension. O'Toole's petition for a rehearing was denied on August 15, 1979.

On February 10, 1981, the superior court found that O'Toole was incapacitated for the performance of his duty and issued a judgment granting peremptory writ of mandamus ordering a rehearing on the retirement application.

### Issue

The sole issue is whether there is substantial evidence to support the trial court's finding that there was no "light duty" assignment in the police department available to O'Toole.

### Discussion

■ When the superior court has rendered its judgment on mandamus and the judgment is appealed, the scope of appellate court review is limited to a determination of whether the evidence, viewed in the light most favorable to the respondent, sustains the findings of the trial court, resolving any reasonable doubts in favor of those findings. (*Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 691-692 [133 Cal.Rptr. 154].) The superior court found that O'Toole was incapacitated for the performance of full police duties due to his industrial injury and that the police department had no light duty assignments available for him.

---

[1] There is no explanation for the delay of almost two years between the filing of the application and the beginning of the hearings on the application.

The standard to be applied in determining whether O'Toole is entitled to retirement with a pension is set out in San Francisco Charter section 8.559-3 which provides: "Any member of the police department who becomes incapacitated for the performance of his duty by reason of any bodily injury received in, or illness caused by the performance of his duty, shall be retired."

In *Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273, [95 Cal.Rptr. 657], the appellate court construed the phrase "incapacitated for the performance of his duty," stating that where there are permanent light duty assignments available, "his duty" reasonably could be construed to refer to *"duties required to be performed in a given permanent assignment within the department . . . ."* (*Id.*, at p. 278, italics in original.) In *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76 [117 Cal.Rptr. 534], the court held that a "person should not be retired if he can perform duties in a given permanent assignment within the department. He need not be able to perform any and all duties performed by . . . policemen. Public policy supports employment and utilization of the handicapped. [Citations.] If a person can be employed in such an assignment, he should not be retired with payment of a disability retirement pension." (*Id.*, at p. 80.)

The Board contends that O'Toole is not entitled to retirement benefits because he is not incapacitated for the performance of his regular assigned duty. O'Toole's regular police department assignment was as public affairs officer from November 1971 until March 1979, when he retired from the department. This assignment was obviously compatible with his disability, for he appears to have worked full time for some six and one-half years prior to his resignation. O'Toole had excellent qualifications for his assignment—a master's degree in public administration—and his supervisors praised the quality of his work. O'Toole admits that he would still be the public affairs officer if he had not resigned to take a position with the security department of Pacific Telephone Company.

Since O'Toole was able to perform the duties of his permanent assignment within the department, under the *Barber-Craver* standard, he should not be retired with a disability pension. The trial court, however, found that there were no limited duty assignments available so, (presumably) the *Barber-Craver* standard did not apply. The trial court's finding was based on a letter written by Police Chief Gain to the Board reporting that no light duty assignments were available. In addition, the chief testified that the police commission had a policy that every police officer must be able to perform full police duties. This testimony before the Board, on another occasion in 1978, incorporated by stipulation into the record of the O'Toole case, was that "it is our position that we do not have limited duty positions in the police department. No position, by definition, is limited." "[T]he police officer should be able to perform all of the

tasks required of a police officer. And the essence of that, of course, is being able to engage in physical encounters and make arrests. That's what police officers are for. . . . We have no limited duty positions. We have limited duty persons, and obviously we are accommodating them now, until the point when they come before the Board for retirement. . . . Up until that time, obviously we are accommodating them, until we can implement this policy when we have filled [a] sufficient number of vacancies."

However, Chief Gain also testified that the availability of light duty assignments depended on the desire of the applicant.

"Mr. Maguire: [I]f an officer comes in to his superior with some partial disability and says he wants to continue working, the department at the present time will allow that: is that correct?

"Chief Gain: Yes.

"Mr. Maguire: Okay. But if the same officer comes into the Retirement Board with the same disability and wants to retire, and the Retirement Board asks the Police Department whether there is a position available for him, the Police Department says, no, there is not?

"Chief Gain: Yes, because, again, the Charter requires the Retirement Board to retire someone with a disability."

■ We do not agree with the trial court's findings that the police department has no light duty assignments available for O'Toole. Despite the police commission policy disfavoring limited duty positions, the fact of the matter is that as of 1978, the San Francisco Department had at least 40 "Permanent and Indefinite Light Duty Officers" even though, if asked, the police chief would tell the Board that no light duty assignments were available whenever an industrially injured officer wanted to retire.

Our case is distinguishable from *Barber* v. *Retirement Board, supra,* 18 Cal.App.3d 273, where there were only two permanent light duty positions available in the fire department for a person of Barber's rank and condition and those positions were currently filled by two officers with more seniority than Barber. The court found that the addition of another lieutenant in the clerical bureau would constitute an unwarranted and unnecessary expense for the city.

Looking at the realities of this case, O'Toole was employed as a public affairs officer for some six and one-half years following the inception of his disability. He could have continued in his position had he not chosen to retire. There was evidence that a police officer is better able to function in the job than a civilian.

In fact, the position was filled by another police officer when O'Toole left the department.

The record establishes that as a matter of police department *practice* there was a permanent light duty assignment as public affairs officer available to O'Toole as long as he wanted the job. If there is one fact clear, it is that O'Toole was not incapacitated for the performance of the duties of this permanent position with the police department.

It comes down to this: Is a police department *paper* policy that there are no permanent limited duty positions—a policy honored in the breach rather than in the observance—substantial evidence that there are no such positions? We think not.

We conclude, therefore, that there is no substantial evidence to sustain the finding of the trial court.

The judgment is reversed and the trial court is directed to enter its order denying the petition for writ of mandate.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied February 24, 1983, and respondent's petition for a hearing by the Supreme Court was denied March 29, 1983.