[Civ. No. 66578. Second Dist., Div. Four. Apr. 19, 1983.]

WALTER STUESSEL, Plaintiff and Appellant, v.
CITY OF GLENDALE et al., Defendants and Respondents.

COUNSEL

Loew & Marr, Robert J. Loew, Cecil W. Marr and Mary Ann Healy for Plaintiff and Appellant.

Frank R. Manzano, City Attorney, and Scott H. Howard, Assistant City Attorney, for Defendants and Respondents.

OPINION

**McCLOSKY, J.**—Walter Stuessel appeals from the judgment of the Los Angeles Superior Court denying appellant's petition for a peremptory writ of

mandate pursuant to Code of Civil Procedure section 1094.5, directing respondents City of Glendale (City) and Hugh McKinley, its city manager and hearing officer, to set aside their decision denying appellant's application for a service connected disability pension pursuant to the Public Employees Retirement System (PERS) as set forth in Government Code section 20000 et seq.

## CONTENTIONS

Appellant contends that the trial court abused its discretion: (1) ". . . as a matter of law, in its interpretation of the correct standard to apply in determining the applicability of Government Code section 21022 to appellant's disability"; (2) in permitting respondents to circumvent the intent of Government Code section 21022 by "labeling" as police work a civilian position and by assigning appellant to such a position while permanently depriving him of his peace officer status with all of its rights and responsibilities; (3) in that if appellant's disability is determined to be " 'permanent and stationary,' " he has a fundamental vested right to a disability retirement if he is substantially incapacitated from the performance of his normal and usual active law enforcement duties; and lastly (4) in that the decision of the trial court resulted in the impairment of appellant's fundamental vested rights to both his employment and to his pension, as well as potential loss of other statutory rights.

## FACTS

Appellant was hired as a police officer by the City of Glendale on October 18, 1965. On May 3, 1979, while employed and acting as a police officer, he suffered an injury to his left upper extremity. On September 5, 1979, he filed an application for disability retirement from the City of Glendale police division, pursuant to Government Code section 21025. Respondent City denied his application for disability retirement on January 2, 1980, and offered him a permanent modified light duty position within the police division, informing him that he would be, ". . . remaining in [his] same Police Officer Classification and [would] continue to receive the salary and fringe benefits as other employees in the Police Officer Classification." Respondents also removed appellant's right to carry a concealed firearm and his power to make arrests due to his claim of inability to perform physically strenuous tasks in the police division, and for his safety and the safety of the public.

On January 6, 1981, Stuessel appealed the denial of his disability retirement to respondent city manager, who, after an administrative hearing, issued "Findings, Decision and Order" upholding the decision to deny appellant's requested disability retirement. He found, among other things, that appellant suffered an industrial related physical injury in the course and scope of his employment as a police officer employed by the City. He specifically found that

Stuessel's injury and physical condition did not preclude or incapacitate him from performing the police officer job duties required in the permanent light duty positions of operations officer and/or front desk officer; that the City maintains in the police division the positions of front desk officer and operations officer which are light duty positions in the police division; and that a position of operations officer and/or front desk officer was vacant and available for Stuessel's immediate placement.

Respondent McKinley, as city manager, then issued the order upholding the decision of the director of personnel of the City to deny appellant's application for an industrially related disability retirement and affirmed the director's decision that appellant could return to work in a permanent light duty position as an operations officer and/or front desk officer.

Pursuant to Code of Civil Procedure section 1094.5, appellant petitioned the Los Angeles Superior Court for a writ of mandate directing the respondent city manager to set aside his decision and grant appellant a service connected disability retirement allowance.

Following a hearing and a review of the administrative hearing transcript, the trial court issued "Findings of Fact and Conclusions of Law and Judgment" denying the petition for peremptory writ of mandate. The trial court applied the "independent judgment test" (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]) and found, among other things, that respondent City removed appellant's right to carry a concealed firearm and his power to make arrests "due to [appellant's] claim of inability to perform physically strenuous tasks in the Police Division"; that the City had "established a program of permanent modified light duty job positions and availability in the Police Division for police officers who have suffered injury which incapacitates them from performing physically strenuous job tasks"; that the City "maintains the job positions of front desk officer and operations officer as permanent light duty positions in the Police Division of the City of Glendale"; and that appellant, "when placed into a permanent modified light duty job position in the Police Division retains all salary, vacation, retirement, and promotional abilities and benefits as any other police officer in the City . . . ."

The trial judge then found that "the weight of the evidence does support the Respondent City Manager's decision to deny the disability retirement application of [appellant] and place [appellant] in a permanent modified light duty work position in the Police Division"; that "[t]he weight of the evidence does support Respondent City Manager's decision that [appellant] was not so incapacitated by his injuries suffered on May 3, 1979, that he could not return to work as a police officer in a permanent modified light duty work position"; that

the City "maintains permanent modified light duty work positions in the Police Division, and that the positions of front desk officer and operations officer are permanent modified light duty positions therein"; that "a position of operations officer and/or front desk officer is vacant and available for [appellant's] immediate placement"; that appellant's physical condition does not preclude him from performing the job duties required in either of those two modified light duty positions; that the City is empowered to create permanent modified light duty work positions in the police division for permanent placement of police officers who have suffered an injury which incapacitates them from performing full "in field" physically strenuous tasks; and that the City "is empowered for the safety of the [appellant] and for the safety of the public generally to remove [appellant's] ability [*sic*] to carry a concealed firearm and make arrests."

### DISCUSSION

■ Where, as here, the superior court has rendered its judgment on mandamus and the judgment is appealed, the scope of appellate review is limited to a determination of whether the evidence, viewed in the light most favorable to the respondent, sustains the findings of the trial court, resolving any reasonable doubts in favor of the findings. (*Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 691-692 [133 Cal.Rptr. 154]; *Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43 [154 Cal.Rptr. 29], cert. den., 444 U.S. 930 [62 L.Ed.2d 187, 100 S.Ct. 273]; *O'Toole* v. *Retirement Board* (1983) 139 Cal.App.3d 600 [188 Cal.Rptr. 853].)

We have reviewed the entire record including the administrative hearing transcript and find therein substantial evidence to support the trial court's findings and judgment under the *Harmon* standard.

■ The central issue in this case is whether a police officer, who is industrially incapacitated from the full performance of his "in field" duties, may be placed in a permanent modified light duty position within the police division of City as a front desk or operations officer, or combination of both, where he is not incapacitated from carrying out the requirements of such position.

We shall hold that where, as here, such employee retains his police officer classification, continues to receive the same salary and fringe benefits and has the same promotional opportunities as other employees in the police officer classification, he may be placed in such available permanent modified light duty position even though he no longer has the right to carry a firearm or make arrests as a peace officer.

### I

Appellant contends that the trial court abused its discretion "in its interpretation of the correct standard to apply in determining the applicability of Govern-

ment Code section 21022 to applicant's disability" as that section "sets forth the standard for the entitlement of a local safety member to disability retirement pursuant to PERS."

Government Code section 21022 provides that: "Any patrol, state safety member, state industrial, or local safety member incapacitated for the performance of duty as the result of an industrial disability shall be retired for disability, pursuant to this chapter, regardless of age or amount of service."

Appellant cites us to *Mansperger* v. *Public Employees' Retirement System* (1970) 6 Cal.App.3d 873 [86 Cal.Rptr. 450], as the first case construing Government Code section 21022. In that case, the court held that Mansperger, a fish and game warden, was incapacitated within the meaning of Government Code section 21022 because he was *substantially* unable to perform his usual duties. Its square holding was that "to be 'incapacitated for the performance of duty' within section 21022 means the *substantial* inability of the applicant to perform his usual duties." (*Id.,* at p. 876.) Since *Mansperger* was decided, other California appellate court cases have construed the phrase "incapacitated for the performance of his duty" or "incapacitated for the performance of duty." (See *Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273 [95 Cal.Rptr. 657]; *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76 [117 Cal.Rptr. 534]; and *O'Toole* v. *Retirement Board, supra,* 139 Cal.App.3d 600.)

*Barber* construed the phrase "incapacitated for the performance of his duty" to mean that where there are permanent light duty assignments available, " 'his duty' " reasonably could be construed to refer to "*duties required to be performed in a given permanent assignment within the department . . . .*" (*Barber* v. *Retirement Board, supra,* 18 Cal.App.3d at p. 278; italics in original.) In *Craver,* the court held that a "person should not be retired if he can perform duties in a given permanent assignment within the department. He need not be able to perform any and all duties performed by . . . policemen. . . . [Citations.] If a person can be employed in such an assigment, he should not be retired with payment of a disability retirement pension." (*Craver* v. *City of Los Angeles, supra,* 42 Cal.App.3d at p. 80.)

In *O'Toole,* where there was a permanent light duty assignment available to an officer as a public affairs officer, which position he had filled for six and one-half years following the inception of his disability, the Court of Appeal held that he was not incapacitated for the performance of the duties of this permanent position within the police department. We conclude that the "normal and usual full range of duties" of *Mansperger* has been wisely modified by the case law of *Barber, Craver* and *O'Toole.*

## II

Appellant's contention that "the trial court abused its discretion in permitting respondents to circumvent the intent of Government Code section 21022 by 'labeling as police work' a civilian position and by assigning appellant to such a position while depriving him of his peace officer status with its rights and responsibilities" is without merit.

There was substantial evidence to support the trial court's finding that the permanent modified light duty positions existed before the onset of Stuessel's disability and were available within the police division. Further, there was substantial evidence that he retained his police officer classification and his rights to receive the same salary and fringe benefits and promotional opportunities as other employees in the police officer classification. There was also substantial evidence that he was not incapacitated from the performance of duties in a given permanent assignment within the police division of the City. As was said in *Craver*: "Public policy supports employment and utilization of the handicapped. [Citations.] If a person can be employed in such an assignment, he should not be retired with payment of a disability retirement pension. (*Craver* v. *City of Los Angeles, supra,* 42 Cal.App.3d at p. 80.)"

Appellant's claim that the positions of front desk officer and/or operations officer are really civilian positions because no *permanent* assignments of sworn police officers had previously been made to those positions is meritless. As Captain Rutkoske testified, the reason they had not had a sworn police officer permanently in that position before was because "they had not had anybody that is qualified for that position yet." According to Captain Rutkoske's testimony, the front desk and operations positions existed for approximately a year or a year and one-half prior to the onset of appellant's disability and were available to him *within* the police division as a police officer.

## III

Appellant relies heavily on a claim that as police officer he has a vested fundamental right to carry a firearm and exercise his peace officer power to make arrests. ■■■ A local police department may take away the right of a police officer to use firearms and exercise the power to arrest. (See *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364 [132 Cal.Rptr. 348].) The Legislature in enacting Penal Code section 832 specifically spelled out its intent in section 3 of Statutes 1971, chapter 1504 that: "It is the intent of the Legislature in enacting this act that the minimum standards described in Section 2 of this act shall be designed to raise the level of competence of peace officers where necessary *and are not intended to supersede state or local law enforcement policy regarding the use of firearms or the exercise of powers to arrest.*" (Italics added.)

We conclude that a police officer, as a peace officer, has no fundamental or vested right to carry a firearm or exercise the power to make arrests where, as here, there is a proper medical reason involving his own safety and that of the public for removing those rights.

## IV

 We conclude that the permanent modified light duty positions which are available and offered to appellant are positions within his status as a police officer employed in the police division of respondent City. *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108 Cal.Rptr. 293], cited by appellant is inapposite. It involved a group of city employees classified as miscellaneous members who desired classification as safety members. That is not the case here. Appellant is a police officer whose classification as a safety member of PERS does not change because of his assignment to the available permanent modified light duty work position in the operations section of the police division. In fact, as Captain Rutkoske testified, it is preferable to have an experienced officer, such as appellant, who has performed field work, to handle the available positions.

## V

Appellant's contentions that the trial court's decision results in the impairment of his fundamental vested rights to both his employment and pension, as well as other statutory rights, are devoid of merit and are answered by our foregoing discussion. In his brief, he asked us to conclude that: "He must either forfeit his vested right to employment if he does not return to work as a civilian or he must forfeit other pension and statutory rights if he *does* return." The short answer to that statement is that he is not being asked to return to work as a civilian, but as a police officer in the police division with all the employment and pension rights that any other police officers of the police division of City have. We expressly conclude that the right to carry a firearm, whether concealed or not, is not a fundamental or vested right of a police officer incapacitated from doing so without danger to that officer or the public.

The judgment is affirmed.

Kingsley, Acting P. J., and Amerian, J., concurred.

A petition for a rehearing was denied May 9, 1983, and appellant's petition for a hearing by the Supreme Court was denied July 14, 1983.