Filed 8/28/14  Gilbert v. County of San Bernardino CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SHARON GILBERT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN BERNARDINO,<br><br>    Defendant and Respondent. | D065797<br><br><br><br>(Super. Ct. No. CIVDS1005837) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Faunce, Singer & Oatman, Edward L. Faunce and Larry J. Roberts, for Plaintiff and Appellant.

Meyers, Nave, Riback, Silver & Wilson, Arthur A. Hartinger and Jesse Lad, for Defendant and Respondent.

Sharon Gilbert appeals from a judgment denying her petition for a writ of mandate directing the County of San Bernardino (County) to apply for her disability retirement

under Government Code section 31721, subdivision (a).[1]  The trial court denied the petition based on its finding the County did not consider or treat Gilbert as disabled under section 31721(a) and thus the County had no statutory obligation to file the disability retirement application.

On appeal, Gilbert contends:  (1) the court erred in concluding section 31721(a) was triggered only if the County considered Gilbert to be "permanently" disabled; and (2) there was insufficient evidence supporting the court's factual conclusion that the County did not consider Gilbert to be disabled.  We reject Gilbert's contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The parties presented the case to the court based on the written record, consisting of declarations, deposition transcripts, and documentary exhibits.  After considering this evidence and oral argument, the court issued a statement of decision detailing its factual findings.  Both parties accept these factual findings as true for purposes of this appeal. As do the parties, we summarize the relevant facts based primarily on the court's statement of decision, and will discuss additional facts in the record as relevant to the legal issues.

The County has employed Gilbert since 1980 and she is a member of the San Bernardino County Employees Retirement Association (Retirement Association).  In 1998, Gilbert worked as an employment services specialist in the Transitional Assistance

---

1      All further unspecified statutory references are to the Government Code.  For convenience, the word subdivision will be omitted from the statutory references.

department in Victorville. This department is responsible for administering the County's support programs to persons in need of financial, nutritional, and/or medical assistance. Gilbert's duties involved assisting welfare recipients and other needy clients to find employment.

Beginning in 2005, Gilbert believed she was being harassed by her supervisors and other employees, and developed a " 'depressive reaction.' " In October 2006, Gilbert's treating doctor "removed her from work" based on this condition.

When Gilbert returned to work about six weeks later, she requested a transfer from the Victorville office. The County agreed, and transferred her to the Transitional Assistance office in Del Rosa. Less than three months later, Gilbert filed an internal complaint against her Del Rosa supervisor. In response, the County reassigned Gilbert to a different supervisor in the Del Rosa office.

Shortly after, in May 2007, Gilbert was diagnosed with depression and "taken off work by her treating psychiatrist." Several months into this medical leave, the County notified Gilbert she had exhausted all of her leave time, and offered Gilbert four options: (1) resign; (2) request additional "Medical Leave of Absence"; (3) complete an application to determine eligibility for disability retirement; or (4) participate in a process to determine possible work accommodations if her treating medical providers determined that she had "specific permanent and stationary restrictions."

Gilbert chose to request a further medical leave of absence, which was approved. She was then placed on temporary medical leave through August 2008.

3

While on medical leave, Gilbert was treated by several physicians. In April 2008, a clinical psychologist classified Gilbert as " '*Temporarily* Partially Disabled' " and concluded she could return to work in July 2008 if she worked no more than 25 hours per week with close supportive supervision. (Italics added.) In August 2008, an orthopedist diagnosed Gilbert with repetitive motion injury and chronic neck and back injury and opined that Gilbert was " '*Temporarily* Partially Disabled' " and could return to work with restrictions. (Italics added.)

The next month, in September 2008, Gilbert requested to return to work, provided it was not in a Transitional Assistance office. The County agreed and placed Gilbert in the County's "Modified Duty Program," which is designed to accommodate work restrictions on a temporary basis. As part of this program, Gilbert was assigned to the Arrowhead Regional Medical Center, where she remained in her prior work classification (employment services specialist) at the same pay rate. In this program, her work restrictions included no heavy lifting, no repeated bending and reaching, limited keyboarding, and a flexible work schedule. The Modified Duty program has a time limit of 180 days.

In April 2009, Gilbert asked to return to the Del Rosa Transitional Assistance office because she was "bored" with her current duties. The County indicated that it needed to be informed of any needed work restrictions or accommodations. Gilbert saw an Agreed Medical Evaluator, who concluded Gilbert had reached her " 'maximum medical improvement' " and no longer required future medical care.

4

In October 2009, Gilbert was medically evaluated by an orthopedist. The orthopedist gave Gilbert work restrictions, consisting of no more than 20 minutes of continuous typing and various lifting limitations. Gilbert then met with the County as part of its interactive accommodation process. At this meeting, Gilbert and County representatives *agreed* that the orthopedist's restrictions could be accommodated and Gilbert would return to her employment services specialist position at a Transitional Assistance office beginning October 26, 2009. Gilbert specifically agreed in writing that the proposed "restrictions do not appear to violate essential functions" of her employment services specialist job. Gilbert was told to report to the Transitional Assistance office on October 26.

However, within several days, Gilbert saw her own psychologist, who diagnosed Gilbert with "symptoms of depression," classified Gilbert as " 'temporarily totally psychologically disabled,' " and provided a note stating Gilbert was unable to return to the Transitional Assistance office "per Doctor's order." Gilbert was then placed " 'off-work' " pending further information regarding her work status.

The next month, in November 2009, Gilbert requested a meeting to tender her resignation but she did not appear at the scheduled meeting. Meanwhile, the County attempted to accommodate Gilbert's work restrictions at the Transitional Assistance office and in January 2010, offered her an alternate position working as a workforce development specialist *at a similar classification and pay rate* as her former job. Gilbert consented to be medically evaluated before beginning this position, but then missed the

5

exam. Gilbert then submitted a series of " 'off-work' " orders lasting through March 5, 2010.

Three weeks later, Gilbert informed the County that she was *permanently* precluded from returning to her occupation because of her psychological condition. The County responded by asking for documentation of this claim, but Gilbert did not provide any supporting information. Shortly after, Gilbert submitted to a return-to-work examination with psychiatrist Dr. Barbara Strong, who conducted an extensive examination and concluded Gilbert *could* return to work with work restrictions. Specifically, Dr. Strong diagnosed Gilbert with a depressive disorder, but opined that "Ms. Gilbert is able to return to work *on a full-time basis*, but should adhere to the following work restrictions: [¶] 1. Cannot work with her former manager, Gustavo Cisneros. [¶] 2. Needs to work in a less stressful work environment." (Italics added.) The County agreed to the restrictions and scheduled another interactive accommodation meeting to place Gilbert in an accommodated position similar to her prior employment services specialist position.

Gilbert failed to attend this meeting, and instead filed her writ petition, seeking to compel the County to file a retirement disability application on her behalf under section 31721(a). As discussed below, section 31721(a) requires the County to file for disability retirement on behalf of an employee "believed to be disabled . . . . "

In her supporting memorandum, Gilbert argued the County was under a mandatory duty to apply for this disability retirement because "by its words and actions" it had treated her as being unable to perform her employment services specialist job. She

6

highlighted the medical opinions that she suffered from: (1) psychological disabilities based on her depression diagnosis; and (2) physical disabilities based on her orthopedist's diagnosis and work restrictions. Relying on these opinions and the County's acceptance of her requests for work transfers, medical leaves, and a modified duty status, Gilbert argued the County was aware she was disabled and could not perform the duties of her usual job position.

The County raised numerous arguments in opposition. Of relevance here, the County asserted it had no statutory obligation to file for disability retirement under section 31721(a) because its actions and statements reflected its good faith belief that Gilbert could return to her employment services position with reasonable accommodations and it continued to believe these accommodations would satisfy Gilbert's medical needs. In support, the County produced hundreds of pages of documentation regarding Gilbert's employment/medical history and its responses to this information.

After evaluating the written record and holding a hearing, the court agreed with the County's position. Based on the factual record (summarized above), the court found Gilbert did not meet her burden to show the County considered or treated her as disabled within the meaning of section 31721(a), concluding "[t]he evidence shows that the County was willing to accommodate the restrictions provided by Gilbert's doctors and return her to her prior position . . . ." The court explained:

> "[U]ntil the filing of this writ petition, the County consistently attempted to accommodate Gilbert and return her to work. . . . [C]ontinuing 'off work' orders from her doctors has prevented a

7

return. None of these orders however ever indicated the situation was permanent and stationary.

"Gilbert's argument that the County considers her disabled is not supported. The only evidence she has submitted consists of vague statements in her petition and declaration, without a single document in support. In contrast, Gilbert's statements are contradicted by the substantial evidence submitted by the County . . . . [¶] Gilbert's claims and statements are not consistent and are found not credible."

DISCUSSION

I. *Legal Principles Governing Writ of Mandate*

Code of Civil Procedure section 1085(a) allows a court to issue a writ of mandate to "compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." To prevail in a writ of mandate proceeding, the petitioner has the burden to show (1) a clear, present and usually ministerial duty; and (2) a clear, present and beneficial right to performance. (*Catalina Investments, Inc. v. Jones* (2002) 98 Cal.App.4th 1, 6.)

II. *Legal Principles Governing County's Duty To Apply for Disability Retirement*

The County employee retirement system is governed by the County Employees Retirement Law of 1937 (CERL). (§ 31450 et seq.) Gilbert brought her writ of mandate action under Article 10 of CERL. This article "provides the mechanism for disability retirement of qualified county employees." (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 23.)

The first code section of this article, section 31720(a), states in relevant part that a member who is "*permanently incapacitated for the performance of duty* shall be retired for disability regardless of age" if the injury arose during the course of employment and

8

the member's duties contribute to the incapacity. (Italics added.) Section 31721(a), the provision at issue here, identifies the persons with standing to apply for *this* disability retirement: "A member may be retired for disability upon the application of [1] the member, [2] the head of the office or department in which he [or she] is or was last employed, [3] the board or its agents, or [4] *any other person on his [or her] behalf, except that an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled, unless the member waives the right to retire . . . .*" (Italics added.)

The parties agree that the "shall apply for disability retirement" language in the fourth category imposes on the County a *ministerial duty* to apply for disability retirement if certain contingencies exist, including if the County "believe[s]" the employee "to be disabled . . . ." (§ 31721(a); see *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 460 (*Lazan*) [interpreting identical statutory language applicable to the state employees retirement system].) The courts apply an objective standard to measure this "belief," namely whether the public entity, by its words and actions, manifested a belief that the employee is permanently incapable of performing his or her job duties and thus eligible for retirement under section 31720. (See *Lazan, supra*, 140 Cal.App.4th at pp. 461, 464.) Permanent incapacity exists if the employee's injury results in a substantial inability to perform his or her usual duties. (*Curtis v. Board of Retirement* (1986) 177 Cal.App.3d 293, 297-298; *Mansperger v. Public Employees' Retirement System* (1970) 6 Cal.App.3d 873, 876-877.)

9

Under these standards, an employee is not permanently incapable of performing her duties if an employer accommodation would allow the employee to continue performing the essential functions of the job. (See *Schrier v. San Mateo County Employees' Retirement Assn*. (1983) 142 Cal.App.3d 957, 961-962 (*Schrier*); *Harmon v. Board of Retirement* (1976) 62 Cal.App.3d 689, 694-696; see also *Thelander v. City of El Monte* (1983) 147 Cal.App.3d 736, 744-745; *Craver v. City of Los Angeles* (1974) 42 Cal.App.3d 76, 79-80; accord San Bernardino County Employees Retirement Association, Procedures for Disability Retirement Applications and Formal Hearings, Rule 1(e).)[2] Thus, as Gilbert acknowledges, section 31721(a) does not trigger a mandatory duty for an employer to file for disability retirement if an employer disability accommodation "will not . . . substantially alter the employee's usual duties." If an injured worker can perform light duty assignments and this assignment includes the essential duties ordinarily required in the usual job position, the employee is not entitled to a disability retirement under CERL. (See *Hosford v. Board of Administration* (1978) 77 Cal.App.3d 854, 865; *Harmon v. Board of Retirement, supra*, 62 Cal.App.3d at pp. 694-696; *O'Toole v. Retirement Board* (1983) 139 Cal.App.3d 600, 603; see also *Craver, supra*, 42 Cal.App.3d at pp. 79-80; *Barber v. Retirement Board* (1971) 18 Cal.App.3d 273, 279.) Public policy supports continued employment of people who are able to work with employer accommodations. (*Thelander v. City of El Monte, supra*, 147 Cal.App.3d

---

[2] We grant the County's unopposed request that we take judicial notice of the Retirement Association's procedures for determining retirement eligibility under the applicable CERL statutes.

10

at pp. 745-746; *Schrier, supra*, 142 Cal.App.3d at pp. 961-962; *O'Toole v. Retirement Board, supra*, 139 Cal.App.3d at p. 603.)

### III. *Permanent Disability*

As a major predicate underlying her appellate arguments, Gilbert contends an employer must file for disability retirement under section 31721(a) even if an employee is only *temporarily* disabled. This argument is without merit. As discussed above, section 31721(a) is specifically tied to section 31720. Section 31721(a) provides the procedural rules for determining standing to obtain a determination regarding whether a member shall be retired for disability *under section 31720*. Section 31720 states that a member is entitled to disability retirement if the member is "*permanently* incapacitated for the performance of duty." (Italics added.) Thus, section 31721(a)'s references to the parties with standing to apply for *this* disability retirement necessarily refer to a permanent disability. "An employee who is temporarily absent from the workplace due to illness . . . where both employer and employee understand the employee will return to work when the reason for the [absence] ceases, would have no need to pursue a disability retirement before the board of retirement." (*Stephens v. County of Tulare* (2006) 38 Cal.4th 793, 802.)

Contrary to Gilbert's assertions, the plain meaning of section 31721 does not refer to a "temporary" disability. The statute uses the word "disability," without identifying the nature of the disability as temporary or permanent. Where statutory language allows more than one reasonable construction, we are required to consider the statute in the context of the entire statutory framework, and must consider and harmonize statutes that

11

cover the same subject. (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 186.) Under this principle, section 31721(a) necessarily requires an employer to apply for section 31720's permanent-disability retirement *only* if the employer believes the disability may be "permanent" within the meaning of section 31720. Requiring an employer to file for disability retirement for an employee's temporary disability—which cannot as a matter of law be the basis for a section 31720 disability retirement—would be a waste of public resources. Further, imposing an obligation to file for an employee's retirement based on a temporary disability would be contrary to the public policy of encouraging employers to provide reasonable accommodation for disabled workers. We decline to interpret the statute in such a manner.

The court properly applied a "permanent disability" standard in determining whether a duty to file an application was triggered under section 31721(a).[3]

IV. *Sufficiency of Evidence Supports Court's Factual Conclusions*

Gilbert alternatively challenges the sufficiency of the evidence to support the court's conclusion that the County—by its words and actions—did not manifest a belief that Gilbert was incapable of performing her job duties with accommodations.

_____

[3] Gilbert argues a "permanent disability" under section 31720 includes a disability for an "extended and uncertain" period. She relies on CERL statutes permitting the reemployment of a disabled employee if the disability no longer precludes the employee from performing the work. (See § 31729.) We need not decide this issue because even assuming a permanent disability includes one for an "extended and uncertain" period, we would reach the same result here because as explained below there was substantial evidence that the County was willing and able to accommodate Gilbert's disability in her usual job position.

12

"[W]here a trial court's factual finding is challenged on the ground there is no substantial evidence to sustain it, the power of the reviewing court begins and ends with the determination as to whether, on the whole record, there is substantial evidence, contradicted or uncontradicted, that will support the trial court's determination. [Citation.] [¶] The appellate court views the evidence in the light most favorable to the respondents [citation], resolves all evidentiary conflicts in favor of the prevailing party and indulges all reasonable inferences possible to uphold the trial court's findings [citation]." (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)

In her appellate briefs, Gilbert concedes the County did not manifest a belief that she was unable to perform her job when it transferred her to the Del Rosa office, and then reassigned her to work under another supervisor within that office. But she argues that the County indicated a belief that her disability prevented her from performing her usual duties: (1) in May 2007 when it granted her medical leave based on her diagnosed depression; and (2) in September 2008 through October 2009 when it assigned her to the Arrowhead Medical Center on modified duty status. These arguments are without merit.

First, the court had a substantial evidentiary basis to find the County's agreement to allow Gilbert to go on medical leave for her diagnosed depressive condition did not demonstrate its belief that she was permanently unable to perform the job. At the time, Gilbert's psychiatrist had diagnosed Gilbert with a *temporary* disability and thus Gilbert requested a temporary leave from work. An employer's agreement to provide a limited-time medical leave does not support an inference the employer believes the employee is

13

permanently unable to perform the job. The CERL retirement statutes were enacted to ensure that workers who were "*permanently* incapacitated" from performing the work would be " 'retired for disability' " to ensure they receive a pension *and* to "effect[uate] . . . efficiency and economy in public service by replacement of employees . . . who have become superannuated or otherwise incapacitated." (*Curtis, supra*, 177 Cal.App.3d at pp. 297-298.) This policy is inapplicable when a "county employee elects to take a medical leave (paid or unpaid)" and it is contemplated that "the employee will be reinstated upon his or her ability to return to work." (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1133.)

Moreover, several months into her medical leave, the County gave Gilbert various options, including to participate in a process to identify work accommodations. The court had a reasonable basis to find the County's conduct in providing this option to Gilbert demonstrated the County's willingness to effectively accommodate Gilbert's claimed disability. Additionally, the fact that Gilbert declined to apply for disability retirement bolsters the County's understanding that Gilbert was not in fact permanently disabled because she did not consider herself as such.

We likewise conclude the court had a substantial evidentiary basis to find Gilbert's assignment to the Arrowhead Medical Center did not reflect the County's belief that she was permanently incapable of performing her employment services specialist job. First, the evidence showed that Gilbert remained in the same job classification and pay while she worked in this assignment. The evidence further showed that although she initially began in a data entry position, she was later placed in a job that was functionally

14

equivalent to her prior employment services specialist position. As Gilbert acknowledged at her deposition, in May 2009 her Arrowhead Medical Center job assignment, "was . . . like an employment services spot in that I was working with patients and working with agencies, trying to get people on to some kind of program so that their bills would be paid." If an employer can place an employee in a job position that includes the central tasks of his or her prior job, the employee is not "permanently incapacitated for the performance of duty" as that phrase is used in section 31720. (*Schrier, supra*, 142 Cal.App.3d at pp. 961-962; see *Craver v. City of Los Angeles, supra*, 42 Cal.App.3d at pp. 79-80; *Barber v. Retirement Board, supra*, 18 Cal.App.3d at p. 278.)

Equally significant, at the end of the Arrowhead Medical Center placement, County officials met with Gilbert to engage in an interactive process to determine whether the County could accommodate her continuing claimed disabilities. At that point, Gilbert's identified disability was based on a note from Gilbert's orthopedist, who stated that she could type no more than 20 minutes continuously and had various lifting restrictions. At the conclusion of this meeting, Gilbert expressly *agreed* in writing that these restrictions could be accommodated when she returned to her employment services specialist position at a Transitional Assistance office. Gilbert also specifically agreed in writing that the proposed "restrictions do not appear to violate the essential functions of the [employment services specialist] position." Based on these facts, the court could have reasonably concluded that the County's actions reflected its understanding that Gilbert was not permanently disabled and was not incapacitated to perform the job.

15

It was only after that meeting that Gilbert produced a note from her psychiatrist stating she was unable to return to her employment services specialist position because she was "temporarily totally psychologically disabled." During the next several months, the County made numerous attempts to meet with Gilbert to attempt to accommodate this claimed disability and in fact offered her an alternative position working as a workforce development specialist at a similar classification and pay rate as her former job. Gilbert rebuffed these attempts. Gilbert also failed to produce any medical evidence showing her claimed psychological disability was permanent and prevented her from working in her prior position. At that point, a psychiatrist performed an extensive examination, and concluded that although Gilbert had a depressive condition, she *was medically able to return to work on a full-time basis,* with two restrictions (less stressful environment and not working under a particular supervisor). The County *agreed to the restrictions*, but Gilbert refused to return to work. She then filed her writ petition seeking to compel the County to apply for her permanent-disability retirement.

These facts are materially different from the circumstances in *Lazan, supra*, 140 Cal.App.4th 453, relied upon by Gilbert. There, the county officials repeatedly told the employee (a deputy sheriff) "they could *not* accommodate her work restrictions" and there was no equivalent position available. (*Id.* at p. 461, italics added.) Additionally, the evidence showed the alternative position later offered by the county—a "temporary" clerical position in the human resources department—was inadequate because it was temporary and did not provide the same promotional opportunities as her former job. (*Id.* at pp. 461-462.) Further, the undisputed medical evidence (of which the county was

16

aware) established that the deputy sheriff's disability was permanent, not temporary. (*Id.* at p. 462.)

In contrast, Gilbert was offered the same position as her prior job, and the accommodations offered (including limited computer work and lifting requirements, the assurance she would not be placed with a particular supervisor, and placement in a less stressful environment) would not change her primary duties. Additionally, there was substantial evidence to support a conclusion that Gilbert's job would provide similar promotional opportunities as her prior job.

Based on the record before us, the court had ample evidence to conclude Gilbert did not meet her burden to show the County—by its words and actions—considered her to be permanently disabled, i.e., incapable of substantially performing the essential attributes of her usual job.[4]

---

[4]    Based on this conclusion, we do not reach the County's alternative argument that it had no duty to file a retirement application under section 31721(a) because it had not discharged Gilbert from her position and was not "about" to separate her from her employment.

DISPOSITION

The judgment is affirmed.  Appellant to bear respondent's costs on appeal.


                                                              HALLER, J.

WE CONCUR:


BENKE, Acting P.J.


McINTYRE, J.