# Sherman v. Sherman et al.

March 27, 1942.

Stephen L. Blakely for appellant.

Morris Weintraub and Phillip Schiff for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant instituted this action in equity alleging the existence of an equal partnership between him and the appellee, Kut, for the conduct of a laundry and dry cleaning business, based upon the agreement of Kut to contribute $5,000, $2,500 of which was to be used in the payment of appellant's creditors. In return, appel-

lant had contributed the assets, including the equity in mortgaged equipment, of a laundry business owned and operated by appellant in Cincinnati, Ohio. It was further alleged that a contract of partnership, written in Hebrew, had been executed, but that appellant had never received a copy; that the partnership had established an office and plant in Dayton, Kentucky, to which the assets contributed by appellant had been delivered; that the books of the partnership, contrary to appellant's wishes and demands, had been kept in the German language with which appellant was unfamiliar; that Kut had taken possession of and assumed entire control over the partnership business and excluded appellant therefrom; and that, although the contract of partnership provided for arbitration of all disputes, Kut had refused appellant's demand for arbitration. The prayer was for a dissolution of the partnership and an accounting, and that a receiver be appointed to take charge of the assets and operate the business pending the dissolution.

In his answer the appellee, Kut, denied that he had executed a written contract or entered into any form of partnership with the appellant, and traversed the other material allegations of the petition. Affirmatively he pleaded his sole ownership of the business; the pendency of a similar action in the Court of Common Pleas in Hamilton County, Ohio; and an agreement with the appellant to arbitrate the present dispute, and the refusal of the appellant to comply therewith. The issues were joined by a reply, and the Chancellor, after hearing the testimony of the appellant and his wife, overruled the motion for a receiver and dismissed the petition on the ground, primarily, that the appellant had failed to prove the existence of a partnership.

As we interpret the Chancellor's remarks appearing in the transcript of testimony, his rulings were the result of his conclusions that the existence of the written contract of partnership referred to in the petition and the testimony, coupled with appellant's failure to either produce it or take the deposition of the rabbi who wrote it and had possession of it, rendered incompetent the testimony of appellant and his wife as to its contents; and that in any event, appellant's testimony disclosed that one of the objects of the agreement, which had resulted in the removal of appellant's assets from Ohio to Kentucky, was to defraud appellant's creditors, thus

precluding him from invoking the aid of equity to extricate him from the resulting dilemma.

In testing the correctness of the Chancellor's views, it is not necessary to recite the testimony, or to do more than consider the effect of appellant's unexplained omission to take the deposition or otherwise attempt to procure the testimony of the rabbi who wrote and retained the custody of the alleged partnership agreement, and thereafter, to call attention to appellant's conduct, and his admissions relative to his actual financial condition and the objects which he had in view, or in the accomplishment of which, he acquiesced.

It has become axiomatic that a completed written memorial is the best, and, in the absence of fraud or mistake, the only admissible evidence of the agreements which the parties thereto have undertaken to perform. Of necessity, the rule implies the ability of the party relying upon the facts memorialized to produce the memorial. Thus, when it is lost, destroyed, or beyond the ability of the party to produce it and the jurisdiction of the Court to compel its production, oral or secondary proof of its contents is admissible. Many courts, including this one, apparently have held that the mere fact that the writing is shown to be in the possession of a person not within the jurisdiction of the Court, is sufficient to render the secondary evidence of its contents competent; but a large majority of these cases, when analyzed, disclose that presumptively, at least, the location of the custodian or the taking of his deposition, by means of which the document itself could have been produced, would have been burdensome or impossible of accomplishment. On the other hand, many authorities hold that the mere fact that the document and its possessor are beyond the court's jurisdiction is insufficient to render secondary evidence of the document's contents admissible in the absence of proof that the party seeking to prove its contents had made reasonable efforts to secure the presence or take the deposition of the witness. The only proper solution is that found in the authorities holding that the question of what constitutes a reasonable effort to produce the original, as a condition precedent to the introduction of secondary testimony of the character referred to, must depend upon the facts of each particular case, and be resolved by the trial court in the light of those facts in the exercise of a sound dis-

cretion. American Jurisprudence Vol. 20, Sections 434, 435, 436, Pages 386-388 inclusive; Corpus Juris, Vol. 22, Section 1036, and the cases cited in the footnotes, especially the notation to the case of Federal Chemical Company v. Jennings, 112 Miss. 513, 73 So. 567, L. R. A. 1917D, page 530.

For the purposes of the present inquiry it is sufficient to say that the scribe and custodian of the contract of partnership is known to the appellant, a resident of Cincinnati, and, presumably, a willing witness, and the record is wholly devoid of any indication that his presence at the trial was sought or desired, or that any effort was made to take his deposition; and that under these circumstances we are unwilling to hold that the Chancellor abused his discretion in ruling that the testimony of the appellant and his wife as to the terms of the contract was inadmissible. The distinction which appellant's counsel seeks to draw between the competency of proof that a partnership was formed and proof of its terms, if sound, avails him naught, since mere proof that a partnership was agreed upon would not disclose a violation of its terms or establish appellant's right to the relief sought.

Although he had alleged in his petition that his debts aggregated $2,500, appellant's testimony showed that he owed several times that much and was in a desperate financial situation. According to his testimony, Kut was to settle this indebtedness at fifteen cents on the dollar, but even if the $5,000 which appellant says Kut agreed to contribute would have been sufficient to liquidate the indebtedness on this basis, the fact remains that three of the creditors declined to accept the compromise. Thereupon, according to the appellant, Kut stated that the creditors would be compelled to accept 5% on the dollar.

Appellant denied, on cross examination, that he had agreed that he would transfer the business, including its mortgaged equipment, to Kut in return for the latter's agreement to employ him in the business. Whatever may have been the true agreement between the parties, or the motives which actuated them in consummating it, the fact remains that the business was moved to Dayton, Kentucky, and thereafter conducted as "Reading Laundry & Dry Cleaners, Max Kut, Prop." Appellant protests that this method of operation was contrary to the

agreement, but his own testimony conclusively shows that he acquiesced in, and, in fact, promoted all that was done, including the printing of his name as "Manager" on advertising cards which disclosed Kut as the owner. He acted as interpreter when the lease to Kut was executed, and, at frequent intervals, accepted checks signed by Kut under the printed signature "Reading Laundry & Dry Cleaners." He signed as "Manager" letters written on letterheads bearing Kut's name as "Proprietor." These and other transactions shown in the testimony make it abundantly clear that if appellant was actually a partner, he was at least willing that the public should remain in ignorance of that fact.

Ancient offspring of Equity is the principle usually expressed by the maxim: "He who comes into Equity must do so with clean hands." Out of his own mouth appellant has proven his hands unclean, and, for this, if for no other reason, the Chancellor was justified in dismissing his petition. "In a long and unbroken line of cases this court has refused relief to one, who has created by his fraudulent acts the situation from which he asks to be extricated." Asher v. Asher, 278 Ky. 802, 129 S. W. (2d) 552, 553.

Judgment affirmed.