LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE; and First State Bank of Pineville, Appellants,

v.

Emmett J. FOSTER; James F. Mitchell; Raymond J. Bisceglia; R.D. Barton; Ben H. Cox; J. Roy Shoffner; Ray McGregor and J. David Lewis, Appellees.

James F. MITCHELL, Cross-Appellant,

v.

LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE and First State Bank of Pineville, Cross-Appellees.

Raymond J. BISCEGLIA; R.D. Barton; Ben H. Cox; J. Roy Shoffner; and Ray McGregor, Cross-Appellants,

v.

LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE; and First State Bank of Pineville, Cross-Appellees.

J. David LEWIS, Cross-Appellant,

v.

LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE; and First State Bank of Pineville, Cross-Appellees.

Emmett J. FOSTER, Cross-Appellant,

v.

LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE; and First State Bank of Pineville, Cross-Appellees.

Nos. 85–CA–2603–MR, 85–CA–2640–MR, 85–CA–2641–MR, 85–CA–2746–MR and 86–CA–106–MR.

Winston E. Miller, Charles M. Pritchett, Jr., Hal Nance Bogard, Michael R. Mercer, Brown, Todd & Heyburn, Louisville, Eugene Goss, Harlan, for appellants.

Garrett T. Fowles, Cawood & Fowles, Pineville, Glenn W. Denham, Middlesboro, Lowell W. Lundy, Barbourville, William A. Watson, Middlesboro, Ted M. Hayden, J. Stanley McNeese, Memphis, Tenn., appellees.

Before HAYES, McDONALD and WEST, JJ.

McDONALD, Judge:

This is an appeal from the judgment of the Bell Circuit Court which summarily dismissed the complaint filed by the appellants and the counterclaims of the appellees. Although the judgment concludes that the complaint failed to state a cause of action, it was entered pursuant to motions for summary judgment by various appellees.[1]

This action was commenced on October 30, 1984, by the appellants First State Bank of Pineville (hereinafter "bank") and Liberty National Bank and Trust Company of Louisville (Liberty). The complaint alleged that the appellees, in their former capacities as directors and/or officers of the Bank of Middlesboro, had negligently breached the duties they owed to the bank and knowingly violated certain statutory lending limits,[2] therein incurring losses to the bank of $5,600,000. In addition to asserting various defenses to the claims the appellees filed counterclaims in which they alleged the bank owed them a duty to maintain an insurance policy to indemnify them for any losses the bank might incur as a result of their negligent or unlawful making of loans. Such coverage was not available and the appellees sought indemnity from the bank and costs and attorneys' fees.[3]

The events leading to this lawsuit are not complex. In 1981 Liberty loaned approximately $2.8 million to C.H. Butcher, Jr., and Phillip R. Hayes to be used to purchase 94% of the stock in the Bank of Middlesboro. As collateral for the loan Butcher and Hayes pledged the stock to Liberty, and Liberty kept possession of the stock.

Subsequently the bank, allegedly due to the improper lending practices of the appellees, incurred severe losses. In 1983

---

1. Summary judgment was originally moved for jointly by the appellees Bisceglia, Barton, Cox, McGregor and Shoffner. Mitchell later moved to join in the motion. Foster moved to join in the motion after judgment was entered. Only appellee Lewis did not at some point move for a dismissal of the complaint.

2. KRS 287.280.

3. Appellants concede that the counterclaims should be reinstated in the event that the dismissal of the claim is reversed.

Butcher and Hayes defaulted on the amounts due to Liberty. Liberty transferred the shares into its own name and attempted to find a buyer for the stock.[4] In July, 1983, after some negotiation, an agreement was reached with First State Bankshares, a holding company and sole shareholder of First State Bank of Pineville. Under the terms of this agreement Liberty loaned $1.5 million to First State Bankshares which used $900,000 of the proceeds as a capital contribution to First State Bank of Pineville. The bank in turn paid Liberty $900,000 for the shares of the Bank of Middlesboro. It was further agreed that the bank would pay Liberty the sum of $60,000 annually for five years as a collection fee. In return Liberty agreed to assist the bank in collecting the bad out-of-area loans and damages from its former directors and officers and/or their insurers. Further, Liberty was to receive a percentage of certain of the amounts recovered on the bank's behalf. After the purchase of the shares of stock, the Bank of Middlesboro merged with the First State Bank of Pineville and the former's shares were extinguished.

As stated previously, the court dismissed the appellants' claim for failure to state a cause of action. There is no question, however, that the complaint states a cause of action. The appellees argued in their motions for summary judgment, and in this appeal, that summary dismissal was appropriate based on their defense of equitable estoppel, there being no issue of genuine fact that the current shareholders of the bank were not the shareholders at the time of the injuries complained of.[5] In support of their argument the appellees rely primarily on the case of *First State Bank of Nortonville v. Morton*, 146 Ky. 287, 142 S.W. 694 (1912). In that case damages were sought from a former officer of the

plaintiff bank for negligent mismanagement. Although the suit was commenced by the bank, the court allowed the corporate veil to be pierced as "all of the present stockholders are so circumstanced that no relief should be afforded them in a court of equity...." *Id.*, 142 S.W. p. 699. In *Morton* the new shareholders had purchased all the stock of the bank with knowledge of the alleged mismanagement and at a price reflecting the wrongdoing. The court adopted the following reasoning from the case of *Home Fire Ins. Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024 (1903):

> So long as they [the current shareholders] received all that was contracted for, there is no equity in allowing them to recover back a considerable portion of what they paid merely because their vendor had previously wronged some one else who could have obtained redress in the name of the corporation which they are now able to use. *Id.*

The equitable considerations established in *Home Fire, supra,* were summarized in *Bangor Punta Operations v. Bangor & A.R. Co.*, 417 U.S. 703, 711, 94 S.Ct. 2578, 2583, 41 L.Ed.2d 418, 425–426 (1974), as follows:

> [T]he shareholders of the plaintiff corporation in that case had sustained no injury since they had acquired their shares from the alleged wrongdoers after the disputed transactions occurred and had received full value for their purchase price. Thus, any recovery on their part would constitute a windfall, for it would enable them to obtain funds to which they had no just title or claim. Moreover, it would in effect allow the shareholders to recoup a large part of the price they agreed to pay for their shares, notwithstanding the fact that they received all they had bargained for. Finally, it would permit the shareholders to

4. Liberty was not permitted under state law to operate the bank itself. Apparently the bank was on the verge of going under and state and federal banking regulatory agencies were anxious to find a remedy for the ailing institution and its creditors other than liquidation.

5. The contemporaneous ownership doctrine is generally only applicable in shareholder derivative actions. *See* KRS 271A.245 which provides in part, "No derivative action shall be brought ... by a person claiming ownership of shares of the corporation ... unless the plaintiff was an owner of shares ... at the time of the transaction of which he complains...."

reap a profit from wrongs done to others, thus encouraging further such speculation.

■ While a cursory comparison of the facts of *First State Bank of Nortonville v. Morton, supra,* to those in the instant case would appear to require the result reached by the trial court, there are nevertheless critical distinctions in the situations that dictate against applying the equitable estoppel defense so as to preclude recovery by the bank herein. Firstly, unlike either *Morton* or *Bangor Punta, supra,* the shareholders of appellant First State Bank of Pineville would not be the only beneficiaries to all amounts recovered in this litigation. Under the terms of its collection agreement with Liberty, the bank is required to recompense Liberty at the rate of 85% of all amounts recovered over $5,000,000, and 15% of all such sums over $7,000,000. Should these amounts be recovered by the bank, Liberty would recoup the remainder of its losses resulting from its loans to Butcher and Hayes. Thus, even assuming as the sole owner of the bank that First State Bankshares would reap a "windfall," the equitable principle of *Home Fire,* intended to prevent unjust enrichment, would, if applied, work an injustice to Liberty.

Secondly, and more importantly, in purchasing the shares from Liberty, the bank bargained for and paid consideration to Liberty for all the corporation's assets including the right to pursue the claims at issue. Thus there would be no "windfall" to the new owners and thus no basis to invoke the equitable considerations addressed in *Home Fire* and *Morton.*[6]

■ The appellees interpret the *Morton, Home Fire* and *Bangor Punta* cases, *supra,* as barring any cause of action for negligence or mismanagement not undertaken by a corporation or derivatively by its shareholders once a transfer of the corporation's stock has transpired. Such a broad interpretation we believe is unwarranted, ignores well established equitable principles and would, as observed in *National Union Electric Corp. v. Matsushita Elect.,* 498 F.Supp. 991, 1004 (E.D.Pa., 1980), result in a windfall to the alleged wrongdoers. Clearly piercing the corporate veil and applying the contemporaneous ownership doctrine should only be resorted to in those cases where the new shareholders either purchased their shares directly from the wrongdoer (*Home Fire* and *Bangor Punta*), or where the purchasers pay a price reflecting the mismanagement and, having received full value for their purchase, seek to recover the purchase price, that is, to get something for nothing. (*Morton*). Clearly, as neither of these situations is presented in this case, the appellees are not entitled to a dismissal of the claims on equitable grounds. The equitable principle that one who seeks equitable relief must come with clean hands has long been recognized by the courts in this Commonwealth. E.g., *Sherman v. Sherman,* 290 Ky. 237, 160 S.W.2d 637 (1942); *White v. City of Hopkinsville,* 280 Ky. 661, 134 S.W.2d 236 (1939). The "clean hands" doctrine did not apply to the former officer in the *Morton* case because the stockholders, having purchased the stock from the alleged wrongdoer, also had no "standing in equity." *Id.,* 142 S.W. p. 700. The appellant bank obtained the shares, not from a wrongdoer but from Liberty, a pledgee of the shares.[7] Liberty, either as pledgee or, after the default of Butcher and Hayes, as owner of the shares, could have maintained this action on behalf of the corporation. We can think of no reason, then, why Liberty could not assign this cause belonging to the corporation to the purchaser of the shares of stocks along with all the other assets of the corporation, nor why this transfer should for any reason enure to the benefit of the appellees.

**6.** The Court in *Home Fire* noted that an action for "past mismanagement" was "scarcely in contemplation of the parties" at the time the shares were transferred. 93 N.W. at 1030.

**7.** The pleadings to date at least do not contain any allegations that Liberty, through its dealings with Butcher and Hayes, took any action detrimental to the corporation or otherwise caused or acquiesced in the impairment of the stock.

We agree, however, that the appellant, Liberty National Bank, has no standing to proceed in this suit as a party plaintiff. As Liberty concedes, the cause of action is one belonging to the corporation which has merged with and is known as the First State Bank of Pineville. Liberty has transferred all its rights and interests in the corporation to appellant, First State Bank of Pineville. Liberty is not entitled to recover from the appellees but must look to the bank and the terms of the collection agreement for further remuneration.

Finally, the appellees' argument that the agreement between Liberty and the bank is champertous and void has no merit. Champerty is defined in *Fordson Coal Co. v. Garrard,* 277 Ky. 218, 125 S.W.2d 977, 981 (1939), as follows:

> At common law champerty is defined to be a bargain by the terms of which a person *having otherwise no interest* in the subject matter of an action undertakes to carry on the suit at his own expense or to aid in so doing in consideration of receiving, in the event of success, some part of the land, property or money recovered or deriving some benefit therefrom. [Emphasis our own.]

As discussed previously herein, Liberty, at the time it entered into the agreements with First State Bankshares for the purchase by the Bank of Pineville of the Middlesboro shares, had a viable claim against the appellees. Liberty was not a mere interloper trying to "stir up litigation, multiply contentions, unsettle peace and quiet of a community or set one neighbor against another." *Id.* Liberty, in transferring ownership of the shares and all the attendant claims of the corporation, was attempting to mitigate the damages it sustained during the time it had either an equitable or legal title to the corporation.

The judgment of the Bell Circuit Court is affirmed only as it pertains to the appellant, Liberty National Bank. Otherwise the judgment is reversed and remanded for further proceedings on the claim of the First State Bank of Pineville and the counterclaims of the appellees.

All concur.